ATTORNEY GENERAL vs. SHERIFF OF WORCESTER COUNTY
(and a companion case[1]).

Worcester.  September 12, 1980. — December 3, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Department of Public Health.  Attorney General.  Jurisdiction,* Declaratory relief, Attorney General.  *Administrative Law,* Regulations. *Regulation.  Sheriff.  County,* Correctional facilities.

The Attorney General was an appropriate officer to seek clarification as to the scope of a sheriff's duty to enforce regulations promulgated by the Department of Public Health pursuant to G. L. c. 111, §§ 2, 5, 20 and 21, as those regulations pertained to a county jail and house of correction. [59-60]

County correctional facilities are correctional institutions within the meaning of G. L. c. 111, § 20, and, therefore, regulations promulgated by the Department of Public Health, which provided for inspections of county correctional facilities, were authorized by c. 111, §§ 2, 5 and 21. [60]

Nothing in G. L. c. 127, § 41, authorizing isolation units in houses of correction, required that the Department of Public Health exclude such units from the scope of regulations promulgated pursuant to c. 111, § 21. [60-62]

Regulations promulgated by the Department of Public Health pursuant to G. L. c. 111, § 21, requiring a bed, toilet and sink in each cell of a house of correction were valid as applied to an isolation unit used to detain a suicidal prisoner. [62-63]

TWO CIVIL ACTIONS commenced in the Superior Court Department on August 2, 1979, and August 14, 1979, respectively.

The cases were heard by *Brogna,* J.

The Supreme Judicial Court granted requests for direct appellate review.

---

[1] Sheriff of Worcester County *vs.* Commissioner of Public Health & another.

*Anthony P. Sager,* Assistant Attorney General, for the Attorney General & another.

*Edward F. O'Brien, Jr.,* for the Sheriff of Worcester County.

BRAUCHER, J. These cases question the authority of the Department of Public Health (DPH) under G. L. c. 111, §§ 2, 5, 20 and 21, to adopt "Minimum Health and Sanitation Standards and Inspection Procedures for Correctional Facilities and Detention Centers," 105 Code Mass. Regs. §§ 450.00 et seq., effective May 11, 1978 (regulations), as those regulations affect the Worcester County Jail and House of Correction (Jail). We hold that the regulations are authorized and that §§ 450.104 and 450.113 require the installation of a bed, toilet and sink in a medical isolation cell in the Jail. We further hold that it is the duty of the sheriff to enforce the regulations, and that the Attorney General may maintain a civil action to establish that duty. We direct the entry of an appropriate declaratory judgment.

The Attorney General filed his complaint against the sheriff in the Superior Court in Suffolk County on August 2, 1979, seeking injunctive and declaratory relief. The sheriff filed a complaint seeking injunctive and declaratory relief against the Attorney General and the Commissioner of Public Health in the Superior Court in Worcester County on August 14, 1979. On August 16, 1979, a judge in Suffolk County entered a preliminary injunction prohibiting use of six of the seven isolation cells at the Jail and limiting use of the seventh to suicidal inmates. The cases were consolidated for trial in Worcester. A Superior Court judge in Worcester took a view and tried the cases without a jury in October, and filed his findings, conclusions and order for judgment in November. Judgments were entered dismissing the Attorney General's action and declaring the rights of the parties in accordance with the sheriff's contentions, and the Attorney General and Commissioner of Public Health appealed. We granted their application for direct appellate review of both cases.

The sheriff is satisfied with the statement of facts by the Attorney General, which we summarize. The Jail contains seven isolation cells, including three in the medical unit, that do not contain a toilet, sink, or raised bed. Each has a hole in the floor covered by a grating, flushable only from outside the cell. Prisoners have routinely been stripped down to their underwear when placed in these cells. Inmates have been housed in the three medical isolation cells for punitive purposes and to await medical evaluation or commitment proceedings, for periods ranging from a few hours to several days.

After an inspection the DPH gave notice of noncompliance to the sheriff. The sheriff intends to install the required toilet, sink, and bed in six of the seven cells, and has obtained the necessary funds. But he intends to use the remaining cell, without installing a toilet, sink, or bed, for the temporary confinement of suicidal or potentially suicidal inmates.

The final judgment in the sheriff's action includes declarations that the use of isolation cells for disciplinary purposes was not a violation of law, that §§ 450.101 through 450.104 and 450.113 of the regulations are invalid as applied to isolation cells, that §§ 450.401 through 450.410 on inspection are invalid as applied to county correctional facilities, and that the sheriff may use at least one isolation cell in the medical unit which contains no bed, toilet or wash basin but from which reasonable access may be had under guard to toilet and washing facilities nearby.

1. *Jurisdiction.* If it is the duty of the sheriff to enforce the regulations, but there is an actual controversy as to the scope of the duty, the Attorney General, as chief law officer of the Commonwealth, is an appropriate officer to seek clarification through declaratory relief. G. L. c. 12, § 3. *Attorney Gen.* v. *Kenco Optics, Inc.*, 369 Mass. 412, 415-416 (1976). Hence the Superior Court had jurisdiction of the action by the Attorney General under G. L. c. 214, § 1; c. 231A, §§ 1-3; and c. 249, § 5. See *Attorney Gen.* v. *Trustees of Boston Elevated Ry.*, 319 Mass. 642, 652 (1946) (mandamus). There is no requirement that the complaint

set forth the jurisdictional basis. Compare Mass. R. Civ. P. 8 (a), 365 Mass. 749 (1974), with Fed. R. Civ. P. 8 (a). *Twomey* v. *Board of Appeals of Medford*, 7 Mass. App. Ct. 770, 773 (1979).

2. *County facilities.* The judge ruled "that the right and duty to inspect county correctional facilities for non-compliance with various rules and regulations is given only to the County Commissioners and the Commissioner of Corrections, not to the Department of Public Health." He referred to G. L. c. 126, §§ 1 and 3, providing for inspection by the county commissioners and reports of violations to the district attorney, and to G. L. c. 127, §§ 1A and 1B, providing for the establishment of standards and for inspection and enforcement by the Commissioner of Correction. In view of those provisions he ruled that G. L. c. 111, § 20, providing for inspections by the DPH of "each correctional institution, as defined in section one of chapter one hundred and twenty-five," applies only to State correctional institutions. Hence, he ruled, §§ 450.401 through 450.410 of the regulations, providing for inspections, as applicable to county correctional facilities, are unauthorized. Those rulings were plainly wrong. In G. L. c. 125, § 1, "correctional institution" is defined to mean "correctional facility," and "county correctional facility" and "state correctional facility" are defined as types of "correctional facility." Thus "correctional institution," subject to inspection under G. L. c. 111, § 20, includes county correctional facilities, and §§ 450.401 through 450.410 of the regulations are authorized by G. L. c. 111, §§ 2, 5 and 21, to apply to county facilities.

3. *Isolation units.* "Isolation units" in houses of correction are authorized under G. L. c. 127, § 41.[2] That statute

---

[2]As amended by St. 1979, c. 485, § 23: "The superintendent or keeper of a jail or house of correction may set aside in such jail or house of correction one or more cells to be used as isolation units, and for the enforcement of discipline may confine any inmate thereto; but no prisoner shall be confined to such isolation unit for more than three days without informing the sheriff or the county commissioners thereof and of the

was rewritten in 1955 to substitute more humane treatment for the harsher conditions of solitary confinement previously imposed, which were "deplored" as "barbaric." St. 1955, c. 770, § 31. See Report and Recommendations of the Governor's Committee to Study the Massachusetts Correctional System, 1955 Senate Doc. No. 750, at 43; McGrath, Criminal Law, Procedure, and Administration, 1955 Ann. Survey Mass. Law 119, 126-127. We do not read the provisions that isolation units "shall provide . . . adequate sanitary facilities," and "may contain a minimum of furniture," to mandate harsher conditions than those imposed by the DPH regulations.

Sections 450.104[3] and 450.113[4] of the regulations were issued under G. L. c. 111, § 21,[5] as "rules for . . . houses of correction, . . . regarding . . . the care and use of bedding, . . . and minimum plumbing facilities for human habitation." Neither the statute nor the regulations make any exception for isolation units, and we do not think that G. L.

---

reasons therefor; and in no case for more than ten days for any one offense.

"Such isolation units shall provide light, ventilation and adequate sanitary facilities, may contain a minimum of furniture, and shall provide at least one full meal daily."

[3] "Each inmate is supplied with a bed and bedspring in good condition."

[4] "Each cell within which an individual may be locked for any part of a 24-hour day has working toilet and working handwashing sink with hot and cold running water. Each toilet shall be raised off the floor of the inmate's cell and shall be capable of being flushed from the interior of the cell."

[5] As amended by St. 1968, c. 274: "The department shall make rules for police station houses, lockups, houses of detention, jails, houses of correction, prisons and reformatories, regarding the care and use of drinking cups and of dishes used for food, the care and use of bedding, the ventilation of the buildings and minimum plumbing facilities for human habitation. Such rules may be general or applicable to a single building. A copy of such rules as are applicable to station houses, houses of detention or lockups shall be sent by the said department to the mayor of every city and to the selectmen of every town to which the rules apply; and a copy of such rules as are applicable to jails, houses of correction, prisons, or reformatories shall be sent by the department to the proper authorities. Said officials shall enforce said rules."

c. 127, § 41, requires that the DPH exclude isolation units from the scope of authorized general rules.

Sections 450.101 through 450.103 deal with blankets, pillows and linens, and mattresses and mattress covers. The judge ruled that those regulations are in conflict with G. L. c. 127, § 41. There was no controversy with respect to those regulations; the Attorney General and the DPH assume in their argument that an inmate locked in an isolation cell may be deprived of any article of clothing or other item by means of which he could hang himself. Cf. *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 783-784 (1980) (upholding nonenforcement of regulation when "carried to absurd limits"). We therefore decline to rule on the validity, interpretation or application of §§ 450.101 through 450.103.

4. *Suicidal inmates.* Thus we hold that §§ 450.104 and 450.113 are within the authority of the DPH under G. L. c. 111, § 21, and that no exception is required for county correctional institutions or for isolation units. It remains to consider the judge's conclusions that the presence of a bed, toilet and sink in a cell "makes it easier for an inmate bent upon committing suicide to accomplish his purpose," and that the regulations failed to take into consideration the need for reasonable security measures.

The regulations stand on the same footing as would a statute; all rational presumptions are made in favor of their validity. A court may not substitute its judgment for that of the Legislature if the regulations comport with the power delegated. *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 775-776 (1980), and cases cited. *Palm Manor Nursing Home, Inc.* v. *Rate Setting Comm'n*, 359 Mass. 652, 655-656 (1971). To render the regulations invalid it is not enough that they are not supported by substantial evidence; they must be shown to be arbitrary and capricious. *Grocery Mfrs. of America, Inc.* v. *Department of Pub. Health*, 379 Mass. 70, 80 (1979). The question for judicial consideration is not whether the regulations embody good policy, but whether they have a rational basis. *Id.* at 85.

Here there is no doubt that the use of a bed, toilet and sink relates to the health of the inmate and the sanitation of

the cell. We think the evidence with respect to the danger of suicide falls short of showing that the regulations have no rational basis. The recommendations of experts and of various national organizations vary, but there was evidence that indestructible toilet and sink units exist that are sanitary and cannot be used by an inmate to injure himself or others. We can conceive of beds with springs having similar safeguards. There was extensive testimony as to three successful suicides at the Jail, each of which involved shoelaces, a towel and shirt, or a blanket. In view of undisputed testimony that all such items are taken from a prisoner when he is put in isolation, that evidence does not establish the irrationality of the regulations. We conclude that the regulations requiring a bed, toilet and sink are valid as applied to an isolation unit used to detain a suicidal prisoner.

5. *Conclusion.* The sheriff is one of the "proper authorities" to whom DPH rules are to be sent, and one of the officials who "shall enforce said rules." G. L. c. 111, § 21. G. L. c. 126, § 16. We therefore think it appropriate to declare that duty. We do not, however, order injunctive relief, since we assume that a declaratory judgment will be sufficient to accomplish compliance. See *Secretary of the Commonwealth* v. *City Clerk of Lowell*, 373 Mass. 178, 193 (1977).

6. *Disposition.* The judgments are reversed and the cases are remanded to the Superior Court. A judgment is to be entered in each case declaring that:

(1) The sheriff violated G. L. c. 111, § 21, during the period from May 11, 1978, to August 15, 1979, by placing inmates in isolation cells that did not comply with 105 Code Mass. Regs. §§ 450.104 and 450.113.

(2) Regulations 105 Code Mass. Regs. §§ 450.104 and 450.113 apply to any medical or other isolation cell in the Worcester County Jail and House of Correction in which an inmate is placed, and are valid as so applied and are not arbitrary, capricious, or unreasonable.

*So ordered.*