PRONGHORN, INC., & others[1] *vs.* LICENSING BOARD OF
PEABODY & another[2]
(and a companion case[3]).

Essex.  February 19, 1981. — January 25, 1982.

Present: ARMSTRONG, ROSE, & DREBEN, JJ.

*Alcoholic Liquors*, Local licensing authority, Closing hour.  *Regulation*.
*Administrative Law*, Hearing, Rule making.

Action of a local licensing board requiring all holders of restaurant li-
censes under G. L. c. 138, § 12, to adhere to a uniform closing hour of
1:00 A.M., rather than 2:00 A.M. as previously permitted, was proper
where the board held a regulatory-type hearing and based its action on
public safety considerations.  [72-74]

CIVIL ACTIONS commenced in the Superior Court Depart-
ment on June 23, 1980, and July 3, 1980, respectively.

A preliminary injunction was issued by *Adams*, J., after
hearing, and was subsequently dissolved by him.

*Richard J. Vita* for T.A.P. Management Corp.

*Michael J. Splaine* (*W. Barry MacDonald* with him) for
Pronghorn, Inc. & others.

*Lawrence J. O'Keefe*, City Solicitor, for Licensing Board
of Peabody & another.

ARMSTRONG, J.   These are appeals by the plaintiffs from an
order of a judge of the Superior Court which dissolved a
preliminary injunction issued at their request.  G. L. c. 231,
§ 118, second par.   The injunction had barred enforce-

_____

[1] Caesar's II Lounge, Inc., d/b/a Down Under Lounge, and TM Enter-
prises, Inc., d/b/a One Newbury Lounge.  Pronghorn, Inc., does business
as Balcony Lounge.

[2] The chairman of the licensing board of Peabody.

[3] T.A.P. Management Corp. d/b/a New York Discoteque *vs.* Licensing
Board of Peabody and the chairman of the said board.

ment of a policy first adopted by the Peabody licensing board on June 16, 1980, and readopted on August 4, 1980, which required all holders of restaurant licenses under G. L. c. 138, § 12, to adhere to a uniform closing hour of 1:00 A.M.[4] Before the adoption of the new policy the plaintiffs and other licensees had been permitted by the board to serve alcoholic beverages until 2:00 A.M.

The various arguments of the plaintiffs revolve around two underlying premises: first, that they were entitled to, and did not receive, hearings before the board of an adjudicatory or quasi judicial nature, and, second, that the evidence adduced before the board did not warrant a conclusion that all, or any, of the plaintiffs had violated the provisions of c. 138 and, hence, did not warrant the board's curtailment of their licenses. To a considerable extent the latter contention is unreconcilable with the holdings in *Casa Loma, Inc.* v. *Alcoholic Beverages Control Commn.*, 377 Mass. 231, 233-235 & n.6 (1979), and *Profile Lounges, Inc.* v. *Alcoholic Beverages Control Commn.*, 7 Mass. App. Ct. 453, 454 (1979), which decided that G. L. c. 138, § 12, sixth par., gives a local licensing board a virtually unlimited and unreviewable discretion to determine the closing hours of a restaurant licensee between the hours of 11:00 P.M. and 2:00 A.M.,

---

[4] "Closing hour" is used in this opinion, as it was by the licensing board, to denote the time at which sales of alcoholic beverages must cease. An advisory from the board gave licensees additional time to clear glasses from tables, cause patrons to leave, and secure the premises.

Under the board's June 16 decision the uniform 1:00 A.M. closing policy was to have gone into effect on July 7, but on that date the plaintiffs obtained the first of several court orders enjoining enforcement of the new policy. The judge expressed the view that the evidence before the board had been insufficient to support its conclusion that the public interest required the earlier closing time. Consequently the board held a lengthy hearing on July 30, 1980, following which it issued a detailed decision reaffirming the new policy. The decision was to take effect August 8, 1980, but the judge did not dissolve the injunction until September 2, 1980. Single justices of this court and the Supreme Judicial Court, on September 16 and September 30, 1980, respectively, refused the plaintiffs' applications for injunctive relief under the first paragraph of G. L. c. 231, § 118, so the uniform 1:00 A.M. closing policy has presumably been in effect since September 2, 1980.

so long as the board has accorded the licensee a hearing in accordance with the requirement of that paragraph.

The second sentence of the paragraph, as amended through St. 1977, c. 929, § 2, says that the local licensing authority "shall not decrease the hours during which sales of alcoholic beverages may be made . . . until after a public hearing concerning the public need for such decrease; provided, that any licensee affected by such change shall be given two weeks notice of such public hearing." The first sentence says that the local licensing authority may fix the hours "either generally or specially for each licensee." Here the local board proposed to, and did, act generally, cutting all pouring licenses back to a 1:00 A.M. closing time. No charges were made of violations by the licensees, although it was suggested at the July 30 hearing (see note 4, *supra*) that there was overcrowding in certain licensed establishments during the early morning hours. Rather, the hearings focused on the existence of a public safety problem allegedly arising from the divergence between Peabody's 2:00 A.M. closing time and the 1:00 A.M. closing time in effect in the surrounding communities, a divergence which was claimed to be the cause of a postmidnight onslaught of vehicles whose occupants converged on Peabody bars in search of one or two more drinks.

The board correctly took the position from the outset that the hearing was legislative, or regulatory, rather than quasi judicial in nature. No one factor by itself leads to that conclusion. *Cambridge Elec. Light Co.* v. *Department of Pub. Util.*, 363 Mass. 474, 488 (1973). The facts that the proposed action was to be of general applicability (see 2 Davis, Administrative Law § 15.03, at 353, and § 15.14, at 433 [1958]), that the governing standard was "public need" (see *Dubois* v. *Selectmen of Dartmouth*, 2 Mass. App. Ct. 674, 677-678 [1974]), and that no violations of law were charged against the licensees (contrast *Saxon Coffee Shop, Inc.* v. *Boston Licensing Bd.*, 380 Mass. 919, 922-929 [1980]) in combination point to the appropriateness of a regulatory-type hearing:

that is, one consisting primarily of unsworn statements by interested persons advocating or disapproving the proposed new policy, as contrasted with sworn testimony by witnesses subject to cross-examination in a hearing preceded by specific charges and followed by the adoption of formal findings of fact. See *Foster from Gloucester, Inc.* v. *City Council of Gloucester*, 10 Mass. App. Ct. 284, 289, 292, 295-296 (1980). An adjudicatory or quasi judicial format would not have been well adapted functionally to the type of determination that the board was to make; and, although the board did in fact, contrary to the original ruling, give the attorneys for the plaintiffs great leeway in conducting cross-examination of various witnesses, that did not cause the proceeding to lose its character as a regulatory rather than quasi judicial proceeding. *Cambridge Elec. Light Co.* v. *Department of Pub. Util.*, 363 Mass. at 488, 489.

The plaintiffs make an additional argument, not developed particularly clearly, that the discretion given local licensing authorities by G. L. c. 138, § 12, sixth par., to regulate closing times is unconstitutionally broad because the statute does not provide a meaningful standard, other than "public need," for its exercise. Concededly, the discretion is broad; but, historically, the business of selling alcoholic beverages is subject to pervasive regulation (see *Supreme Malt Prod. Co.* v. *Alcoholic Beverages Control Commn.*, 334 Mass. 59, 61 [1956]; *Connolly* v. *Alcoholic Beverages Control Commn.*, 334 Mass. 613, 619 [1956]), and the conditions under which liquors may be sold are subject to abrupt change at the will of the State or locality. "Liquor licenses are licenses in the technical sense, which are revocable at pleasure without assignment of reasons by the granting authority, and are not intended to confer vested property rights in the holder." *Opinion of the Justices*, 349 Mass. 794, 797 (1965). To the same effect, see *Tracy* v. *Ginzberg*, 189 Mass. 260, 262-263 (1905), aff'd, 205 U.S. 170 (1907); *Jubinville* v. *Jubinville*, 313 Mass. 103, 106 (1943). Cf. *Commonwealth* v. *Downey*, 12 Mass. App. Ct. 754, 756-757 (1981). Local licensing boards may law-

fully refuse to issue any annual licenses, even though the voters have authorized such licenses. *Ferris* v. *Selectmen of Norwell*, 344 Mass. 757 (1962). Against this background the discretion of the local board in fixing closing hours is seen to operate within a comparatively narrow compass, 11:00 P.M. to 2:00 A.M. Where its power is not used against a particular license-holder based on alleged violations, but is instead employed as part of a policy of general application to all license-holders based on public safety considerations, we do not see how rights protected under the Constitution are implicated. In this context breadth of discretion is not constitutionally vulnerable; and unless that discretion is exercised in a manner that is arbitrary or capricious or is based on improper or unlawful considerations, the policy determined by the local board is substantially immune from judicial review. Compare *Attorney Gen.* v. *Sheriff of Worcester County*, 382 Mass. 57, 62 (1980).

It follows that the judge did not err in refusing to continue in effect the injunction against implementation of the 1:00 A.M. closing policy.

> *Order dissolving preliminary*
> *injunction affirmed.*