JUNE HOWE & others[1] *vs.* HEALTH FACILITIES
APPEALS BOARD & another.[2]

Suffolk. June 7, 1985. — August 8, 1985.

Present: KASS, CUTTER, & FINE, JJ.

*Administrative Law*, Judicial review, Scope of review. *Public Health. Department of Public Health.*

The proper standard of judicial review of a decision of the Health Facilities
    Appeals Board reviewing a determination of need made by the Department of Public Health under G. L. c. 111, § 25E, is whether the board's
    decision was arbitrary, capricious or otherwise in violation of law.
    [533-537]
Renovation of space in a hospital at a cost of $64,850 and its subsequent
    rental to a heart center operated as a sole proprietorship by a cardiologist
    was not a project requiring a determination of need by the Department
    of Public Health under G. L. c. 111, § 25E. [538-539]
Where an arthritis center established in a hospital remained in a building
    which was not a part of a proposed construction project for which the
    hospital sought a determination of need by the Department of Public
    Health, the center did not require approval as part of the project; and,
    where only minimal expenses of $2,480 were incurred in setting up the
    center, it did not require a separate determination of need. [539-540]


CIVIL ACTION commenced in the Superior Court Department
on July 21, 1983.

The case was heard by *Katherine Liacos Izzo,* J.

*Paul R. Collier, III,* for the plaintiffs.

*Ellen Janos,* Assistant Attorney General (*Madeline Mirabito
Becker,* Assistant Attorney General, with her) for Health
Facilities Appeals Board.

*Harvey W. Freishtat* (*Peter R. Leone* with him) for New
England Baptist Hospital.

---

[1] The plaintiffs comprise the "Back of the Hill Ten Taxpayers' Group."

[2] New England Baptist Hospital.

FINE, J. This case arises under G. L. c. 111, §§ 25B-25G, inserted by St. 1972, c. 776, § 3, the statute popularly known as the determination of need law. The statute requires that any substantial capital expenditure for construction or renovation, or any substantial change in services, by a health care facility be preceded by a determination of need for such by the Department of Public Health (department). The purpose of the statute (to control the unnecessary expansion by health care institutions of their patient care facilities), its relevant legislative history, and some helpful guidance in its interpretation are set forth in *Brookline* v. *Medical Area Serv. Corp.*, 8 Mass. App. Ct. 243, 249-259 (1979). Specifically, with some significance for the instant case, health care facilities are to be allowed "some degree of flexibility in determining their operational necessities — albeit under the department's watchful eye," "the department's role" is "a major one . . . in defining the contours of the statute," and the department's conclusion as to which projects require determinations of need are entitled to "particular deference." *Id.* at 253, 254, 259. See also *Lahey Clinic Foundation, Inc.* v. *Health Facilities Appeals Bd.*, 376 Mass. 359 (1978); *Wing Memorial Hosp.* v. *Department of Pub. Health*, 10 Mass. App. Ct. 593 (1980); *Shoolman* v. *Health Facilities Appeals Bd.*, 10 Mass. App. Ct. 799, 802-803, 806 (1980); *Adam* v. *Department of Pub. Health*, 15 Mass. App. Ct. 906 (1982); *Gerte* v. *Department of Pub. Health*, 18 Mass. App. Ct. 901 (1984). Not discussed in the *Brookline* case, and not discussed at length elsewhere, is the standard of judicial review applicable to an administrative decision on a determination of need application.

On September 9, 1981, the New England Baptist Hospital filed an application with the department for a determination of need for a project involving renovation and new construction. In accordance with G. L. c. 111, § 25C, and 105 Code Mass. Regs. §§ 100.500 et seq. (1980), a review process was undertaken by the department and several other agencies. Pursuant to § 25C, various separate groups of ten taxpayers, including the plaintiffs, Back of the Hill Ten Taxpayers' Group (Back of the Hill), participated in the administrative proceedings before

the department. On August 18, 1982, the department[3] held a public hearing, and on December 21, 1982, the department voted its partial approval of the application. On March 10, 1983, the department issued a decision in writing, with reasons.

Back of the Hill filed an appeal under G. L. c. 111, § 25E, with the Health Facilities Appeals Board (board).[4] The board considered the record compiled by the department and written and oral arguments from the parties, including Back of the Hill, but declined to hold an evidentiary hearing. On June 24, 1983, the board issued a decision finding "no abuse of discretion or failure to follow required procedures," thereby upholding the department's determination of need.

In this action against the board, Back of the Hill sought judicial review of the board's decision. The hospital intervened as a defendant. A Superior Court judge affirmed the decision of the board, ruling that the court was required under the statute to determine only whether the board's decision was arbitrary or capricious, not whether it was based upon substantial evidence. The judge ruled, however, that even if a substantial evidence standard applied, the decision satisfied that test.

On appeal, Back of the Hill argues, first, that a substantial evidence test for judicial review applied and that the board's decision was not supported by substantial evidence in the record, and, second, that, as a matter of law, the board erroneously excluded from its consideration the cost of establishing an arthritis center and a heart center and the cost of renovating the Brigham East Wing to relocate the heart center.

1. *Scope of judicial review.* The hospital and the board contend that the board's decision should be judicially reviewed only to determine if it is arbitrary or capricious or an abuse of

[3] The department consists of the Commissioner of Public Health and the Public Health Council. G. L. c. 17, §§ 1 and 3. Decisions regarding determination of need applications are made by a majority vote.

[4] The board consists of five persons appointed by the Governor for terms of three years. At least three members must be consumers of health care services "who are not officers or employees of, and do not bear any fiduciary duty to a person or institution providing health care services." One such consumer member, who must be an attorney, is to be designated by the Governor to serve as chairman of the board. G. L. c. 6, § 166, as amended through St. 1981, c. 367, § 1. 113 Code Mass. Regs. § 2.01(3) (1978).

discretion. Back of the Hill argues that the test is more rigorous, namely, whether the decision is based upon substantial evidence. "The substantial evidence test is commonly understood to require that agency findings must rest upon 'such evidence as a reasonable mind might accept as adequate to support a conclusion.' See, e.g., *Bunte* v. *Mayor of Boston*, 361 Mass. 71, 74 (1972). Review under the standard entails scrutiny of the whole record to determine whether substantial evidence exists. See, e.g., *Cohen* v. *Board of Registration in Pharmacy*, 350 Mass. 246, 253 (1966)." *Boston Edison Co.* v. *Boston Redevelopment Authy.*, 374 Mass. 37, 54 (1977). The more deferential "arbitrary or capricious (or the equivalent abuse of discretion) standard" requires only that there be a rational basis for the decision. *Attorney Gen.* v. *Sheriff of Worcester County*, 382 Mass. 57, 62 (1980). Our reading of the statute convinces us that the Legislature intended to require a court reviewing a decision of the board on a determination of need issue to determine only whether the agency decision was legally infirm because arrived at arbitrarily or capriciously, without observance of procedure required by law, or in violation of applicable provisions of substantive law. We read the decision of the Supreme Judicial Court in *Lahey Clinic Foundation, Inc.* v. *Health Facilities Appeals Bd.*, 376 Mass. at 372, as requiring this conclusion. Compare *Shoolman* v. *Health Facilities Appeals Bd.*, 10 Mass. App. Ct. at 803, & 806 n.17.

Section 25C provides for the first level of administrative review of an application for a determination of need, which takes place before the department. After the filing of an application by the health provider, notice to various agencies, and the opportunity for comment on the proposal, the department must hold a public hearing if requested to do so by the applicant, the State, the appropriate regional comprehensive planning agency, or any group of ten taxpayers. The hearing is not an adjudicatory proceeding (105 Code Mass. Regs. § 100.410 [1983]; see *Gerte* v. *Department of Pub. Health*, 18 Mass. App. Ct. 901, 903 [1984]), and there is no requirement that the agency make findings of fact. Under the eighth paragraph

of G. L. c. 111, § 25C (inserted by St. 1977, c. 945, § 4), the department's determination must be made "on the written record compiled by the department during its review of the application," as well as applicable criteria, and it must be in writing and set forth reasons.

Section 25E (and regulations 113 Code Mass. Regs. §§ 1.00 et seq. [1978]) sets forth the procedure for the second level of administrative review and also for judicial review. The second level of review takes place before the board. In its review, the board is restricted to the materials on file with the department. It must decide "whether the determination appealed from was an abuse of discretion, without observance of procedure required by law or in violation of applicable provisions of law." G. L. c. 111, § 25E[5], inserted by St. 1972, c. 776, § 3. The board may order a hearing on the appeal if it determines that the available written materials are inadequate for the consideration required of it.

The final decision of the board is subject to judicial review under the provisions of G. L. c. 30A, § 14, "to the extent they are not inconsistent with the provisions of [§ 25E]." G. L. c. 111, § 25E. General Laws c. 30A, § 14(7), as appearing in St. 1973, c. 1114, § 3, sets forth the basis on which a court may set aside an agency decision. It may do so if the decision is "(a) [i]n violation of constitutional provisions; . . . (b) [i]n excess of the statutory authority or jurisdiction of the agency; . . . (c) [b]ased upon an error of law; . . . (d) [m]ade upon unlawful procedure; . . . (e) [u]nsupported by substantial evidence; . . . (f) [u]nwarranted by facts found by the court on the record as submitted or as amplified [hereunder] . . . in those instances where the court is constitutionally required to

---

[5] A review of the legislative history reveals that an earlier draft of this section required the board to consider "whether or not the department reasonably could have made such a determination from *substantial evidence* then before it [emphasis added]." 1972 Senate Doc. No. 1500, at 8; 1972 House Doc. No. 5968 51-52. The Committee of Conference of the Senate and House recommended that the draft be changed by deleting the reference to the substantial evidence test and replacing it with the standard set out in the present version of § 25E. See Report of the Committee of Conference, 1972 Senate Journal 1954.

make independent findings of fact; or (g) [a]rbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law."

To protect health care provider applicants and the consuming public, whichever in a particular case happens to be the party aggrieved by the board's determination of need decision, the Legislature, rejecting the extremes of both the absence of any judicial review and the award of a trial de novo, sought to impose some intermediate level of judicial scrutiny of the board's decision. The precise issue before us is whether the inclusion of the somewhat more rigorous substantial evidence test in G. L. c. 30A, § 14(7), is "inconsistent with the provisions of [§ 25E]."

The board and the hospital point to a number of factors on the basis of which they urge a finding of inconsistency between the substantial evidence test and § 25E. First, they point to the fact that the agency hearing is not adjudicatory. That alone is not conclusive, however. See *Massachusetts Bonding & Ins. Co.* v. *Commissioner of Ins.*, 329 Mass. 265, 273 (1952). Second, they point out that determination of need issues, involving questions of public policy and informed discretion, political or legislative in nature, are not well suited to judicial oversight. In some analogous situations, the Legislature has chosen to limit the scope of review to an "arbitrary or capricious" standard. *Greenleaf Fin. Co.* v. *Small Loans Regulatory Bd.*, 377 Mass. 282 (1979). *Cast Iron Soil Pipe Inst.* v. *Board of State Examrs. of Plumbers & Gas Fitters*, 8 Mass. App. Ct. 575, 589 (1979). See also *Natick Trust Co.* v. *Board of Bank Incorporation*, 337 Mass. 615 (1958); *Dubois* v. *Selectmen of Dartmouth*, 2 Mass. App. Ct. 674, 677-678 (1974); *Pronghorn, Inc.* v. *Licensing Bd. of Peabody*, 13 Mass. App. Ct. 70, 72-73 (1982). It does not follow that a substantial evidence test could not be employed for judicial review of an administrative determination of such a nature. See, e.g., *Boston Edison Co.* v. *Boston Redevelopment Authy.*, 374 Mass. 37, 51-53 (1977). The critical factor, in our view, is the unworkability of the use of a narrower standard of review by the board than by the court. The board's decision is a determination

whether the department acted arbitrarily or capriciously or abused its discretion in reaching its decision. It is the board's decision, not the initial decision of the department, which is subject to judicial review. Our search has revealed no statutory scheme in which the scope of judicial review was broader than the scope of review before the administrative body whose decision was subject to review. If the statutory scheme were as Back of the Hill contends, a court would be authorized to reverse a board decision which was not improper under the test of arbitrariness. It would invite appeals to the Superior Court from valid decisions of the board. This we do not believe the Legislature intended.[6] We rule that application of the substantial evidence test at the Superior Court level would be so unworkable as to be inconsistent with the provisions of § 25E. The reference in § 25E to G. L. c. 30A, § 14, is not thereby robbed of all meaning. The provisions of that section relating, among other things, to service of process, intervention, and stays, remain applicable.

---

[6] Although we reach the conclusion without hesitation that the substantial evidence test does not apply, we doubt that the application of one or the other of the two alternate standards of review would be outcome determinative in many cases arising under the determination of need statute. In this case, based upon a lengthy administrative record and facts not essentially in dispute, the trial judge ruled that the board's action was proper under either test, and we agree with the conclusion. Ordinarily in such cases it is not the underlying facts about a project which are in dispute but rather the conclusions and policy decisions to be drawn from those facts. The facts would include what the health care provider proposes to construct or renovate or the services it plans to offer, the projected cost, and the availability of similar services at the facility and elsewhere. The administrative decisions based upon those facts are entitled to great deference. See *Massachusetts Auto. Rating & Acc. Prevention Bureau* v. *Commissioner of Ins.*, 389 Mass. 824, 826, 846 (1983). Without some factual support for a decision, an agency decision would ordinarily be viewed arbitrary. If supported by substantial evidence, it is likely to be viewed by a court, reluctant to substitute its own judgment, as reasonable. Although we hestitate to say the test would yield the same results in all situations, what both standards require of an agency action is reasoned decision making within the particular statutory guidelines. See 4 Davis, Administrative Law Treatise, § 29:7 (2d ed. 1984). Cf. 5 Mezines, Stein & Gruff, Administrative Law § 51.02, at 51-42 (1985); Gellhorn & Boyer, Administrative Law and Process 273 (1981); *Associated Indus. of New York State, Inc.* v. *United States Dept. of Labor*, 487 F.2d 342, 349-350 (2d Cir. 1973) (Friendly, J.).

2. *The merits of the appeal.* Back of the Hill first argues that the hospital should not have been permitted to establish a heart center without having included that project in its application for a determination of need. The facts relating to the issue raised are not in dispute. Originally the hospital had planned to operate its own comprehensive cardiac disease detection, prevention, and rehabilitation program on the hospital's premises for inpatients and outpatients. In 1981 the hospital requested an advisory ruling from the department as to whether a determination of need was a prerequisite to its going forward with the project. On June 25, 1981, the department ruled such a determination necessary for the following reasons: (1) the project represented the addition of a new coordinated service, not formerly offered, entailing annual operating costs of more than $75,000, and under G. L. c. 111, § 25B, ninth par., such a project is a substantial change in service within the statute; (2) the proposal was an "addition of a major service to those available" at the facility (105 Code Mass. Regs. § 100.054[A] [1980]); and (3) patients receiving services from the program would be patients of the hospital and they would be billed by the hospital, and the services they were to receive would be controlled by the hospital.

Before the application was filed, the hospital abandoned the concept discussed in the advisory ruling. Instead, the hospital renovated space in the Brigham East Wing at a cost of $64,850 which it rents to the New England Heart Center, a sole proprietorship of a cardiologist, Dr. Ahmed Mohiuddin. Dr. Mohiuddin's practice was formerly located off the hospital grounds. The hospital did not bear the moving costs. No member of the hospital staff works in the heart center. Patients of the heart center are not billed by the hospital. The hospital maintains no control over the nature, scope, or quality of the services provided. The relationship between the hospital and the heart center is that of landlord and tenant. In short, the heart center being operated in the Brigham East Wing is not the same as the proposal which was the subject of the advisory opinion.

The issue is whether the project constitutes a "substantial change in services" by the hospital. That term is defined in G. L. c. 111, § 25B, as amended through St. 1980, c. 541, § 3, subject to further definition by the department. However, when this application was filed, whatever definition was adopted by the department, according to § 25B, had to include the addition of any service which entailed more than $75,000 annual operating expenses. The department's regulations defined the term further to include "every change in kind rather than degree" including any addition of a major service. 105 Code Mass. Regs. § 100.054 (1980). Neither the statute nor the regulations make reference to a rental arrangement resulting in the provision of services which, if provided by the hospital, would require a determination of need.

We think the case is governed by the reasoning in the *Brookline* case. Back of the Hill has not demonstrated how the relocation of the heart center to the hospital grounds under the rental arrangement will result in an increase in health costs to the consuming public. There is no indication that the department has had a practice of regulating private physicians' offices or rentals on hospital grounds. Cf. G. L. c. 111, § 52, as amended through St. 1979, c. 674, § 1 (solo or group medical practice wholly owned by one or more of the practitioners is excluded from the definition of "clinic" in law governing licensing of clinics). The act contemplates some flexibility, and the department's role in defining the contours of the statute is to be a major one. No party disputes the $64,850 figure attributed to expenditures by the hospital to renovate the space in the Brigham East Wing for the heart center to occupy. Even if the funds will not be recouped in the form of rent, the amount expended is less than the amount needed to trigger the determination of need requirement for capital expenditures. The administrative determination was not arbitrary or capricious.

We need not deal at length with the argument concerning the arthritis center. Even assuming that the hospital expanded and coordinated the services previously offered, there is no dispute that the center remains in a part of the "Main" building not covered by the hospital's determination of need application.

Moreover, only minimal expenses ($2,480) for some refurbishing of the space were incurred in setting up the center. Again, we rely upon the agency's expertise in deferring to its definition of the contours of its regulatory authority, and we discern no abuse of discretion.

Other issues raised on appeal do not, in our view, merit discussion.

*Judgment affirmed.*