THEODORE J. SHOOLMAN & others[1] vs. HEALTH FACILITIES
APPEALS BOARD & others.[2]

Suffolk.  October 3, 1988. — February 7, 1989.

Present: HENNESSEY, C.J., ABRAMS, LYNCH, & O'CONNOR, JJ.

*Administrative Law*, Judicial review, Regulations, Failure to raise issue
before agency. *Public Health*, Health care facility. *Department of Public
Health. Health Care Facility. Statute*, Construction. *Notice*.

The Department of Public Health properly determined that several "pre-ad-
mittance post-discharge units," or "hotel" floors, included in the con-
struction of a twenty-six story health care facility were not subject to
the determination of need procedures of G. L. c. 111, §§ 25B-25G,
because the "hotel" floors were not legally, administratively, physically,
financially, or functionally a part of the health care facility. [36-39]
A determination by the Department of Public Health to depart from popu-
lation projection and "use rate" sources required by its own regulations
in calculating the need for some 977 new hospital beds was, in the
circumstances, reasonable and consistent with the department's statutory
charge. [39-41]
Reversal of action by the Department of Public Health was not warranted
on account of alleged defective notice of a hospital's reduction of the
scope of a proposed construction project during the course of the depart-
ment's review and before the department staff published its summary
and recommendation, where no prejudice to the rights of parties appear-
ing before the department was demonstrated. [41-42]
In proceedings before the Department of Public Health concerning a pro-
posed construction project for which a hospital sought a determination
of need under G. L. c. 111, § 25E, the department met its statutory
mandate to set forth in writing the reasons for its decision and to consider
the written comments submitted by parties of record. [43]

CIVIL ACTION commenced in the Superior Court Department
on April 21, 1987.

---

[1] Additional plaintiffs are nine taxpayers organized as Charles River Park
Ten Taxpayer Group.

[2] Department of Public Health; The General Hospital Corporation.

The case was heard by *Elbert Tuttle*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*David A. Guberman* (*Robert J. Muldoon, Jr.*, with him) for the plaintiffs.

*Michael Broad* (*Ernest M. Haddad* with him) for The General Hospital Corporation.

*Douglas H. Wilkins*, Assistant Attorney General, for Health Facilities Appeals Board & another.

O'CONNOR, J. This case arises under G. L. c. 111, §§ 25B-25G (1984 ed.).[3] The purpose of the statute, known as the determination of need law, is to "prevent unnecessary expansion of health care facilities in the Commonwealth and encourage appropriate allocation of resources for health care purposes." *Commissioner of Pub. Health* v. *Bessie M. Burke Memorial Hosp.*, 366 Mass. 734, 735 (1975). The plaintiffs appeal from a judgment of the Superior Court affirming a decision of the Health Facilities Appeals Board approving the Department of Public Health's (department) grant of a certificate of need to Massachusetts General Hospital (hospital) under G. L. c. 111, § 25C. We transferred the case to this court on our own motion. We now affirm the judgment.

On September 3, 1985, the hospital applied to the department for a determination of need for construction of three new buildings at an estimated maximum capital expenditure of $247,235,894. Building 1 was to be twenty-five stories high, Building 2, sixteen stories, and Building 3, a six-story "wraparound" building. Building 1 was to include four "pre-admittance post-discharge units," or "hotel" floors at stories 18-21. The "hotel" floors were intended to accommodate patients' families and patients themselves prior to their admittance to or after their release from the hospital. The hospital stated in its application that the hotel floors were to be a separate project with funding "outside the scope of the application," and that

---

[3] We refer to the statute as it appeared in the 1984 edition. The parties did not address in their brief, nor do we, any possible effects of the amendment wrought by St. 1988, c. 23.

the project would contain 977 beds, which would be 105 beds less than its licensed 1,082 beds. The 977 figure did not include the 80 beds proposed for the "hotel" floors.

During the course of review by the department, at the department staff's request, the hospital provided the staff with new area measurements for the project if Building 3 were to be eliminated. The hospital's response included a proposal that called for retention of a building (the Clinics Building) that was originally proposed to be torn down, increasing Building 1 by adding a sub-basement and substituting an in-patient care floor for one of the four "hotel" floors, and eliminating a bridge from the hospital to the Massachusetts Eye and Ear Infirmary and a proposed driveway to Charles Street. In its "summary for determination of need by the public health council,"[4] the department staff recommended approval of the revised project subject to certain conditions. The summary included the review and recommendations by the Health Planning Council of Greater Boston, the Department of Mental Health, the Rate Setting Commission, and eight ten-taxpayer groups including the plaintiffs in this case. After a hearing, at which presentations were made by representatives of the plaintiffs, the department approved the staff's recommendation. The department determined that there was a need for the proposed 977 beds at a maximum revised capital expenditure of $190,468,401.

The plaintiffs appealed the department's decision to the Health Facilities Appeals Board. The board did not issue a decision within 120 days after the appeal was filed. As a result, in accordance with G. L. c. 111, § 25E, the department's decision was automatically affirmed.

The plaintiffs then brought an action in the Superior Court under G. L. c. 30A, § 14, appealing the board's decision. A judge of that court heard the case on its merits and affirmed the board's decision which had affirmed the department's decision to grant the certificate of need. The present appeal ensued.

[4] The department consists of a Commissioner of Public Health and a Public Health Council. G. L. c. 17, § 1. The Public Health Council consists of the Commissioner of Public Health as chairman and eight members appointed by the Governor. G. L. c. 17, § 3.

General Laws c. 111, § 25E, provides that, in considering an appeal, the Health Facilities Appeals Board "shall restrict itself to a review of materials on file with the department and to consideration of whether the determination appealed from was an abuse of discretion, without observance of procedure required by law or in violation of applicable provisions of law. In the event the board determines that the materials available to it are inadequate to allow the required consideration, it may order [an evidentiary] hearing on the appeal." In *Howe* v. *Health Facilities Appeals Bd.*, 20 Mass. App. Ct. 531, 534-537 (1985), the Appeals Court held that "[t]he board's decision is a determination whether the department acted arbitrarily or capriciously or abused its discretion in reaching its decision." We agree, and we also agree with the Appeals Court that, on judicial review of the board's decision, the question is whether the board acted arbitrarily or capriciously. *Id.* at 536-537. Thus, in this case, the board's role was to decide whether the department's decision was reasonably related to the require- ments and purposes of the determination of need law — the prevention of unnecessary expansion of health care facilities and the encouragement of appropriate allocation of resources for health care purposes, see *Grocery Mfrs. of America, Inc.* v. *Department of Pub. Health*, 379 Mass. 70, 85 (1979), and the board's decision must stand unless it was arbitrary or cap- ricious. We review the board's decision as though it were reached on the merits without an evidentiary hearing. *Howe* v. *Health Facilities Appeals Bd.*, *supra* at 533. We conclude that the department's determination of need approval letter explaining its decision and the supporting staff summary with its attachments demonstrate that neither the department's deci- sion nor the board's decision affirming it was arbitrary or capricious. We consider below the several contrary arguments of the plaintiffs.

I. *The "Hotel" Floors.*

In its application for a determination of need, the hospital disclosed its intention to build four "hotel" floors, but gave no further details, stating that those floors "will be treated as a separate project, with funding outside the scope of this appli-

cation." The department acquiesced. The plaintiffs argue that the exclusion of the "hotel" floors from the determination of need process was improper. We do not agree.

General Laws c. 111, § 25C (1984 ed.), provides in pertinent part: "Notwithstanding any contrary provisions of law . . . no person or agency of the commonwealth . . . shall make substantial capital expenditures for construction of a health care facility or substantially change the service of such facility unless there is a determination by the department that there is need therefor." A "health care facility" is defined in § 25B as "a hospital . . . and any part of such facilit[y]." In *Brookline* v. *Medical Area Serv. Corp.*, 8 Mass. App. Ct. 243, 255 (1979), the court ruled that an energy plant physically separate from health care facilities, providing a significant amount of service to nonhealth care facilities, constructed, leased, and operated by corporations which were not health care facilities, and financed by a nonhealth care facility, did not require a determination of need. The court interpreted the scope of G. L. c. 111, §§ 25B-25G, to include within the determination of need process as part of a health care facility only projects which "bear a substantial nexus" to health care institutions. The court announced that the "nexus must arise from some combination of functional, legal, administrative, and operational ties between the project and the institutions that leads to the conclusion that it is an integral part of the institutions it services." *Id.* at 254.

In *Brookline*, the court also relied on the well established principle that while an administrative or executive interpretation cannot bind the courts, weight should be given to any reasonable construction of a regulatory statute adopted by the agency charged with its enforcement. *Id.* at 258. In enacting the determination of need statute, the Legislature intended the department to have a major role in "defining the contours of the statute, and in considering its applicability on an ad hoc basis to projects that did not fit traditional norms." *Id.* at 254. Accordingly, courts must give deference to the department's determination whether a project is "legally, administratively, financially, physically, and, in terms of its services, so intertwined with the particular facility that it would be appropriate

to view it functionally as part of the health care facility." *Brookline, supra* at 256. See *Howe* v. *Health Facilities Appeals Bd.*, 20 Mass. App. Ct. 531, 537 n.6 (1985); *Shoolman* v. *Health Facilities Appeals Bd.*, 10 Mass. App. Ct. 799, 806 (1980).

The department's decision that the "hotel" floors would not be subject to determination of need procedures was not only consistent with the Appeals Court's holding and rationale in *Brookline, supra,* but it was also consistent with its own previous decisions in unrelated but similar cases which have been brought to our attention. The department rationally and consistent with its prior determinations could have determined that the "hotel" floors bore an insufficient nexus to the hospital to require determination of need review. The department heard testimony that the hotel facility would be used by patients prior to their admittance to and after their discharge from the facility and by individuals wishing to stay near the hospital when a family member is admitted. In its recommendation to the department, the department staff expressed satisfaction that "no cost of the hotel will be reflected in patient care costs." Further, in the hearing before the department, the department solicited testimony which assured it that if the hotel were constructed, there would be a "separate corporation, so there's no question about transferring costs." Finally, the hospital's request for a determination of need was approved with the condition that "no hospital internal funds shall be used for construction or operation of the hotel, [and] no costs of the hotel will be reflected in patient care costs."

The plaintiffs argue that "[a]ny possible doubt about the necessity for determination of need review" of the "hotel" floors is resolved by certain statements made subsequent to the determination of need hearing by hospital representatives in the course of a zoning case in the Superior Court. The representatives stated that the floors constitute "a hospital in every sense of the word," and that they are "an integral part of the hospital's unified facility." We reject the plaintiffs' argument for two reasons, either of which is sufficient. General Laws c. 111, § 25E, empowers the Health Facilities Appeals

Board to look beyond the materials in the record before the department only if the board determines that the materials before it are inadequate. No such determination was made here or required. Furthermore, in light of the differences between the objectives of determinations of need and the objectives of zoning, there is no inconsistency between not viewing the "hotel" as the hospital for determination of need purposes, but viewing it as sufficiently related to the hospital to be an allowed use under the Boston Zoning Code. See *Pellegrino* v *City Council of Springfield*, 22 Mass. App. Ct. 459, 464 (1986).

II. *Calculating Bed Need.*

The plaintiffs argue that, because the department failed to follow its own regulations in determining bed need, the Health Facilities Appeals Board erred in affirming the department's grant of a determination of need for 977 hospital beds. It contends that the department used the wrong figures for two components of the bed need calculation: the population projection for Boston, and bed utilization or "use rate" data.

Title 105 Code Mass. Regs. § 100.535 (1986) provided: "For the purposes of determinations of need under 105 CMR 100.533 . . . , the population of the applicable service area shall be projected for an appropriate year by using the most recent edition of the 'Department of Public Health, Population Projections' and 'Department of Public Health Population Projections Methodology and Handbook for Users.' " The department used these sources for the projected 1990 population of every community within the hospital's service area except Boston. The department's failure to use the required source to project the population of Boston is fatal to the department's determination, the plaintiffs contend.

The record contains a letter to a determination of need program analyst from the department's division of health statistics and research, dated September 11, 1986, as follows: "As we discussed in June of this year, the official Department of Public Health projections for 1990 do not accurately reflect the 1982 and 1984 census statistics for Boston. Facts that have occurred since the 1980 census (upon which the DPH projections were

based) indicate that population projections now in force for Boston are too low. Therefore I advised you that the Department's revision of the Boston population projections would be expected to be comparable to the Boston Redevelopment Authority number of 579,468 for the Boston [population] in 1990.

"Final population projections for Boston by the Department will not be available until 1987, but in the interim, use of the 579,468 1990 Boston population number is a more reasonable forecast than the 497,600 figure listed currently in the Department's official projections."

The department staff summary states that, because the department's projections for Boston's 1990 population were found to underestimate the city's growth, a projection from the Boston Redevelopment Authority was used instead. According to the summary, "[t]he Department is in the process of revising population projections for 1990 for the entire state. Eventually these numbers will incorporate the Massachusetts Institute for Social and Economic Research (MISER) projections for 1990. Staff consulted with the Department's statisticians who indicated that the BRA projection of 579,468 for the City of Boston for 1990 is within the upper limit of the MISER projection of 580,000."

Title 105 Code Mass. Regs. § 100.536 (1986) authorized the department to "accept as supporting documentation any statistical or other factual material containing reliable data. The Department will take official notice of vital statistics and other demographic data . . . compiled by its staff." Of course, as the plaintiffs point out, population projections, while they may at least be partially based on statistics, are not themselves statistics. Title 105 Code Mass. Regs. § 100.536 does not by itself authorize the department to employ population projections supplied by another agency. Nevertheless, in view of the purposes of the determination of need statute, and the manifest necessity to the accomplishment of those purposes that the department have reasonable flexibility in construing and applying its regulations, we conclude that the department was not bound by 105 Code Mass. Regs. § 100.535 to use population projections it knew were inaccurate. Nor was the department

bound to delay the determination of need process until after new editions of "Department of Public Health, Populations Projections" and "Department of Public Health Population Projections Methodology and Handbook for Users" were published. In the circumstances, the department's use of the Boston Redevelopment Authority projections was reasonable and consistent with its statutory charge.

The plaintiffs also argue that the department improperly departed from its calculations of bed need in computing the bed utilization or "use rate." Although a new 1984 use-rate figure had been calculated, the department used 1982 figures, ultimately accounting for a determination of need of one hundred more beds than would have been approved using the 1984 figure. Bed "use rate" is a component of bed need calculations which the department adopts and applies to applications filed during a fixed period. The department periodically changes the use rate to be applied in reviewing applications submitted after a prescribed subsequent date. Under 105 Code Mass. Regs. § 100.540(B) (1986), and G. L. c. 111, § 25C, an applicant is entitled to have its application based on the "criteria in effect on the date of filing of the application unless waived by the applicant." On August 9, 1983, the department adopted the 1982 figures to be set for applications filed between August 9, 1983, and January, 1986. The hospital filed its application on September 13, 1985, and was thus entitled to utilize the 1982 figures. Because the hospital did not waive its right under the statute and the regulation to have the 1982 use-rate data applied, it was the only rate which the department properly could apply. Moreover, in contrast to the population figures for Boston, the department had no evidence that the 1982 use rate figures were in any way unreliable. We conclude, therefore, that the department did not err in applying the 1982 "use rate," and that the Health Facilities Appeals Board's affirmance of that procedure was correct.

III. *Reduction in Project Scope from the Original Application for a Determination of Need.*

As our earlier recitation of facts reveals, the originally proposed scope of the project was reduced during the course of the

department's review and before the department staff published its summary and recommendation. The plaintiffs say that they were not apprised of the "new" proposal until the staff summary was published twenty-one days prior to the hearing before the department. The plaintiffs argue that the hospital's failure to send the plaintiffs a copy of its new proposal violated 105 Code Mass. Regs. §§ 100.110(B) and 100.534(C) (1986), and that the department abused its discretion granted under 105 Code Mass. Regs. §§ 100.110(D) and 100.531(B)(3) (1986), by failing to dismiss the hospital's application. Accordingly, the plaintiffs assert, the Health Facilities Appeals Board erred in affirming the department's decision.

The short but adequate answer to the plaintiffs' contention is that reversal of agency action on account of defective notice is unwarranted except where substantial prejudice is demonstrated. *Solimeno* v. *State Racing Comm'n*, 400 Mass. 397, 406 (1987). The plaintiffs make no such demonstration. When the staff summary was published on September 2, 1986, it disclosed the fact of the department's request to the hospital, as well as the hospital's responsive proposal. Thereafter, the plaintiffs had three weeks before the department hearing to review the application. On September 11, the plaintiffs submitted comments on the staff summary. The comments did not include any objection to the time permitted for response or a request for additional time to review the staff summary and prepare comments. Two of the plaintiffs' representatives, including their legal counsel, testified at the department hearing and made no objection to the time available to prepare their comments. The plaintiffs fail to show that they would have altered their analysis and recommendation in any way had they received notice of the modification in the application any earlier.

The plaintiffs also argue that the hospital proposed such a substantial alteration in the "nature, scope, financing [and] costs" of the original project that the original proposal should have been withdrawn under 105 Code Mass. Regs. § 100.355 and a new proposal submitted. Had that occurred, the plaintiffs argue, the 1984 use-rate figures would have been applied to the bed need calculation, and at most 892 beds could have

been approved. We do not reach this issue. Nothing in the record suggests that the issue was raised before the department as is required by 105 Code Mass. Regs. § 100.970. "A party is not entitled to raise arguments on appeal that he could have raised, but did not raise, before the administrative agency." *Albert* v. *Municipal Court of the City of Boston,* 388 Mass. 491, 493 (1983). See *Seagram Distillers Co.* v. *Alcoholic Beverages Control Comm'n,* 401 Mass. 713, 724 (1988); *Gurry* v. *Board of Pub. Accountancy,* 394 Mass. 118, 126 (1985). While the cited cases involved adjudicatory proceedings, which this case does not, see *Howe* v. *Health Facilities Appeals Bd.,* supra at 534; 105 Code Mass. Regs. § 100.410(C) (1986), no sufficient reason appears not to apply the same rule here.

IV. *The Department's Response to the Plaintiffs' Comments to the Department.*

The plaintiffs argue that, under G. L. c. 111, § 25C, determinations of need "shall be in writing and shall set forth the reasons therefor," and that under 105 Code Mass. Regs. § 100.400(A) (1986), the department must "consider any written comments or specific recommendations submitted by a party of record if filed in a timely and proper manner." The record demonstrates that the plaintiffs submitted comments and recommendations regarding the project both during the deliberation process and in response to the staff summary. However, the record also demonstrates that the department adequately considered the plaintiffs' comments, specifically, in the staff summary, and more generally, in the department's written reasons for its approval. The department staff also addressed the plaintiffs' response to the staff summary in a memorandum to the department and again at the department hearing. We are satisfied that the department met its statutory mandate to set forth in writing the reasons for its decision and to consider the plaintiffs' written comments. The Health Facilities Appeals Board was justified in so concluding.

*Judgment affirmed.*