# United States Court of Appeals
## For the First Circuit

No. 03-1216

VERONICA MARD,

Plaintiff, Appellant,

v.

TOWN OF AMHERST, MASSACHUSETTS,
KATE ZLOGAR, AND KEITH HOYLE,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Lynch, Lipez, and Siler,[*] Circuit Judges.

Harold L. Lichten and Pyle, Rome, Lichten, & Ehrenberg, P.C.
for appellant.
Richard W. Jensen and Morrison, Mahoney & Miller, LLP for
appellees.

November 20, 2003

---

[*]Of the Sixth Circuit, sitting by designation.

**LIPEZ**, **Circuit Judge**.  In her action brought under 42 U.S.C. § 1983, plaintiff Veronica Mard appeals the district court's award of summary judgment in favor of defendants Town of Amherst et al.  Mard complains that the defendants terminated her injury leave benefits without providing adequate notice or opportunity to be heard, in violation of her right to due process under the Fourteenth Amendment of the United States Constitution.  The district court granted the defendants' motion for summary judgment and denied the plaintiff's cross motion for summary judgment.  Finding compliance with the requirements of due process, we affirm the decision of the district court.

## I.

We recite the facts in the light most favorable to the appellant, drawing all reasonable inferences in her favor.  See Macone v. Town of Wakefield, 277 F.3d 1, 5 (1st Cir. 2002).  On September 2, 2000, Mard, a firefighter for the Town of Amherst, Massachusetts, answered an emergency ambulance call at Amherst College.  While proceeding down a hill with a stretcher to retrieve a patient, Mard slipped and fell, landing on her back and shoulder.  As a result of the fall, Mard received injuries to her back, neck, shoulders, left arm, left leg, right knee, and ankle.

After Mard completed the call and returned to the station, she informed her supervisor, Captain Donald R. McKay, that she was injured and would need to go home.  Mard did not return to

work and began receiving injury leave benefits pursuant to Mass. Gen. Laws ch. 41, § 111F. The statute provides that whenever a firefighter of a city or town "is incapacitated for duty because of injury sustained in the performance of his duty," he or she shall be granted paid leave "for the period of such incapacity." Mass. Gen. Laws ch. 41 § 111F. Such leave may not extend beyond "any period after a physician designated by the board or officer authorized to appoint police officers or fire fighters in such [town] determines that such incapacity no longer exists." Id.

As a member of the Amherst Fire Fighters, Local 1764, I.A.F.F. ("the Union"), Mard was a party to a collective bargaining agreement between the Union and the Town. The agreement, a copy of which is sent to all union members within their first month of full employment, specifies the rights and obligations of union members who are sick or injured and affirms that the provisions of the agreement "shall not be less than the provisions of [Mass. Gen. Laws ch. 41, § 111F]." Article 21.5 of the agreement further provides:

> The employee shall upon request submit medical evidence to the Fire Chief on those occasions on which leave as provided herein is claimed when the employee has been treated by a physician or other medical practitioner, including, but not limited to, treatment by an osteopath or chiropractor. The Fire Chief may require the timely presentation of such medical evidence or other evidence reasonably satisfactory to him in connection with a claim for sick or injury leave hereunder in the event he reasonably suspects that the employee making such claim was not

-3-

legitimately incapacitated from performing his duties
as an employee.

Under Article 21.11 of the collective bargaining agreement, the Fire Chief, acting on behalf of the Town, may determine the length and extent of a union member's injury:

> Upon . . . his own initiative the Fire Chief will arrange for medical evaluation of length and extent of disability, including an opinion as to the ability of the employee to perform limited duty. The Fire Chief shall make a determination of suitability for duty taking into consideration the needs of the department . . . .

As provided by Article 21.12, any "disputes regarding interpretation or application of [the] policy [are] subject to the grievance and arbitration procedure" set forth in the agreement.

In June 2001, the Town requested that the plaintiff attend an independent medical examination conducted by neurologist Linda C. Cowell. Dr. Cowell conducted an extensive evaluation and prepared an eight-page report for the Town, which included medical records provided by Mard. The report noted that "the examining process was explained to the examinee and she understands there is no patient/treating physician relationship and the report will be sent to the requesting client." It concluded that Mard "could perform a light duty job with essentially no lifting."

Immediately after Mard's examination by Dr. Cowell, another neurologist, Brian Smith, prescribed medication for migranes that Mard said she had been experiencing. Mard notified the Town that Dr. Smith had placed her on medication that caused

her dizziness and disequilibrium and that therefore precluded her from driving. In response to this information, the Town approved the continuation of Mard's injury leave.

On August 29, 2001, the Town sent Mard a letter notifying her that "an appointment for an Independent Medical Examination ha[d] been arranged for [her]" with a neurologist, Dr. William Donahue. The letter instructed Mard to bring to the appointment "any X-rays, CT scans, MRI studies, [or] other medical records pertaining to [her] injury" and warned that "pursuant to Section 45 of the Workers Compensation Act, failure to attend or obstruction of this examination may suspend your right to compensation."

Mard attended her appointment with Dr. Donahue and brought with her medical records from her orthopedic surgeon, primary care physician, and chiropractor, as well as records relating to a prior MRI. Mard claims that Dr. Donahue did not ask for her medical records and refused to review the records when she offered them to him. She states that Dr. Donahue told her that he did not wish her to provide any unsolicited information and that she should answer only those questions he asked. She further claims that the physician conducted an eleven-minute examination, asking only general questions and neglecting to inquire about her migraines or the side effects of her migraine medication. According to Mard, Dr. Donahue did not review her March 2001 MRI or the initial study of the migraines and failed to address her

-5-

migraines or the effects of her medication in his report to the Town.

The Town, on the other hand, argues that Mard "had the opportunity and did, in fact, present her side of the story to Dr. Donahue," and that the doctor's opinion was "based on reliable information, including his physical examination, the plaintiff's description of her symptoms, and a medical records review." In his four-page report to the Town, Dr. Donahue stated that he took a medical history from Mard and reviewed her medical records, including "an extensive independent medical examination particularly in terms of a history that was done by Dr. Linda Cowell." He discussed in some detail the results of his physical examination of Mard and related Mard's description of her own symptoms. He noted that he did not have available for review the April 2001 MRI study or any "significant recent records of treatment and evaluation." After the evaluation, Dr. Donahue determined that Mard would be able to work "in moderate duty capacity," with certain limitations.

On October 4, 2001, Keith Hoyle, the Town's Fire Chief, notified Mard by letter that she would "no longer be on injured duty status effective October 5, 2001," at which time she would be assigned "moderate duty." When Mard did not return to work on October 5, the Town terminated her benefits. On October 9, 2001, Mard filed a grievance under Article 26.1 of the collective

bargaining agreement, which provides extensive procedures for resolving grievances, defined as "any difference between the parties to [the] Agreement relating to its interpretation, application, or administration . . . ." Pursuant to the grievance procedures established by the agreement, the Grievance Committee found that a grievance existed and referred the dispute to Chief Hoyle. After meeting with the Committee, the Fire Chief agreed that Mard could remain on personal sick leave pending the outcome of the grievance procedure. Also in accord with the collective bargaining agreement, the Committee forwarded the grievance to the Town Manager, who conducted a hearing on November 19, 2001 that involved both parties to the grievance. On November 26, 2001, the Town Manager determined that Mard was no longer eligible for injured on duty status under § 111F or § 21.9. Three days later, the Union notified the Town of its intent to file for arbitration on Mard's behalf as provided for by the collective bargaining agreement.

On December 12, 2001, Mard filed a complaint in the United States District Court for the District of Massachusetts, alleging that the Town terminated her injury leave benefits without providing adequate notice and hearing as required by the Due Process Clause of the Fourteenth Amendment.[1] Mard filed a motion

---

[1]Donald R. McKay was originally a plaintiff in this action but withdrew from the suit on February 19, 2002.

for a preliminary injunction and summary judgment on March 12, 2002. On April 15, 2002, the Town filed its answer to the complaint.

On May 17, 2002, while the arbitration and civil lawsuit were pending, the Union and the Town executed a settlement agreement. It provided, in part:

> Whereas, the parties have reached agreement to settle all issues with regard to the grievance and they intend by the settlement to resolve all outstanding issues relative to all allegations contained in the grievance . . . .

The agreement restored Mard to injured on duty status retroactively to the date on which it had been converted to sick leave, and accorded to her all benefits that would have accrued had this status not been withdrawn. It further provided that Mard should continue to receive benefits pursuant to § 111F until the Hampshire County Retirement Board rendered a decision on her pending Involuntary Application for Accidental Disability Retirement Benefits.

The Town moved for summary judgment in the civil lawsuit on November 20, 2002. On January 16, 2003, the district court held a hearing on the cross motions. At the conclusion of this hearing, the court ruled from the bench that summary judgment should be entered for the Town. To implement this ruling, the court issued an order on January 17, 2002, denying Mard's motion for a preliminary injunction and cross motion for summary judgment and

granting the Town's cross motion for summary judgment. In an accompanying memorandum, the district court summarized the reasons for its decision to enter summary judgment in favor of the Town, referring to its bench decision for a more complete explanation. The court's ruling rested on three grounds: 1) the independent medical examination that led to the termination of Mard's benefits provided her with constitutionally adequate notice and an opportunity to be heard; 2) Mard was afforded constitutionally adequate post-deprivation due process pursuant to the <u>Parratt-Hudson</u> doctrine; and 3) the grievance settlement entered into by the parties constituted a waiver of Mard's due process claims.

We review the district court's grant of summary judgment de novo, construing the evidence in the light most favorable to the non-moving party. <u>Wojcik</u> v. <u>Mass. State Lottery Comm'n.</u>, 300 F.3d 92, 98-99 (1st Cir. 2002). Summary judgment is appropriate where the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Barbour</u> v. <u>Dynamics Research Corp.</u>, 63 F.3d 32, 36-37 (1st Cir. 1995) (quoting Fed.R.Civ.P. 56(c)). We may affirm the award of summary judgment on any ground with adequate support in the record. <u>Houlton Citizens' Coalition</u> v. <u>Town of Houlton</u>, 175 F.3d 178, 184 (1st Cir. 1999). We focus on the district court's due process rulings.

## II.

The threshold issue in a procedural due process action is whether the plaintiff had a constitutionally protected property interest at stake. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-41 (1985); Bd. of Regents v. Roth, 408 U.S. 564, 576-78 (1972).  If she did, the State could not deprive her of this property without due process of law under the Fourteenth Amendment. Loudermill, 470 U.S. at 538.

Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Bd. of Regents v. Roth, 408 U.S. at 577.  Section 111F of the Massachusetts statute creates such an interest for firefighters injured in a work-related accident.  See Gaffney v. Silk, 488 F.2d 1248, 1250 (1st Cir. 1973).  Mard's status under state law as a firefighter who was found to be "incapacitated for duty because of injury sustained in the performance of his duty without fault of [her] own" gave her a property interest in the continued receipt of injury leave benefits that was protected by constitutional due process guarantees. Mass. Gen. Laws ch. 41, § 111F; see Loudermill, 470 U.S. at 538-39.

Once we determine that Mard possessed a constitutionally protected property interest in the continued receipt of her § 111F benefits, we must next ask what procedures were required before the Town could constitutionally deprive her of these benefits.  It is

-10-

well established that "individuals whose property interests are at stake are entitled to notice and an opportunity to be heard." Dusenbery v. United States, 534 U.S. 161, 167 (2002)(internal quotation marks omitted).  Mard argues that the Town failed to provide her with constitutionally adequate notice and an opportunity to be heard before terminating her injury leave benefits.  We examine each of these claims in turn.

### A. Notice

Mard claims that the district court erred in determining that the Town provided her with constitutionally sufficient notice of the impending termination of her § 111F benefits.  She argues that she "had no knowledge that her examination with Dr. Donahue could result in the termination of her benefits either before or immediately after the examination" and that she did not learn of the contemplated action until she received a letter on October 4, 2001, two weeks after her appointment with Dr. Donahue, informing her that her benefits would be terminated the next day.

Although we view the facts in the light most favorable to the appellant, we cannot conclude that the notice provided by the Town was constitutionally deficient.  Due process requires notice  that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections,"  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950), and that

affords "the affected individual . . . a fundamentally fair chance to present his or her side of the story." Puerto Rico Telephone Co. v. Telecommunications Regulatory Bd. of Puerto Rico, 189 F.3d 1, 19 (1st Cir. 1999) (quoting In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig., 982 F.2d 603, 611 (1st Cir. 1992)); see Mathews v. Eldridge, 424 U.S. at 333 (requiring for due process purposes "the opportunity to be heard 'at a meaningful time and in a meaningful manner'"). "The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'" Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 12, 14 (1978).

This is not a case where the plaintiff's benefits were terminated without any prior notice or opportunity to respond. See Kercado-Melendez v. Aponte Roque, 829 F.2d 255, 263 (1st Cir. 1987) (due process violation where Department of Public Instruction dismissed school district superintendent without prior notice or hearing). Nor is it a case where the plaintiff was notified of the pending termination but not of the availability of an opportunity to present her objections. Memphis Light, 436 U.S. at 14 (finding due process violation where petitioners were notified that their utility services would be discontinued if payment was not made by a certain date but were not informed of the availability of "'an

-12-

opportunity to present their objections' to their bills")(citing Mullane, 339 U.S. at 314).

In this case, the Town notified Mard by letter that "an appointment for an Independent Medical Examination" had been arranged for her at the request of the Town. The letter directed Mard to bring to the appointment "any X-rays, CT scans, MRI studies, [and] other records pertaining to [her] injury." In determining whether this letter was reasonably calculated to apprise Mard of the pendency of the examination and possible termination, we must take into account the particular circumstances and conditions under which the letter was sent. See Sarit v. United States Drug Enforcement Admin., 987 F.2d 10, 14 (1st Cir. 1993)(noting that "Mullane clearly contemplates inquiry into the peculiarities and practicalities of a given case" at the time the notice was sent) (internal quotation marks omitted).

Both the state statute and the collective bargaining agreement indicate that the purpose of a required independent medical examination by a Town-designated physician is to evaluate an injured firefighter or police officer's continued eligibility for § 111F benefits. Under the statute, injured on duty status shall not extend beyond "any period after a physician designated by the board or officer authorized to appoint police officers or fire fighters in such [town] determines that such incapacity no longer exists." Mass. Gen. Laws ch. 41, § 111F. Additionally, the

-13-

collective bargaining agreement, a copy of which was issued to Mard when she began to work as a firefighter for the Town, provided that "on his own initiative, the Fire Chief may arrange for a medical evaluation of the length and extent of the disability, including an opinion as to the ability of the employee to perform limited duty." Collective Bargaining Agreement, § 21.11. It also authorized the Fire Chief to "require the timely presentation of such medical evidence or other evidence reasonably satisfactory to him in connection with a claim for sick or injury leave" should he "reasonably suspect[] that the employee making such claim was not legitimately incapacitated from performing his duties as an employee." Id. § 21.5. Mard therefore could have turned to the statute or to the collective bargaining agreement if she was unclear about the reason for the Town's request to attend an Independent Medical Examination. See Sachs v. Detroit, 2003 W.L. 21817875, *9 (E.D. Mich. 2003)(due process does not require that notice of demolition hearing specify what makes the property "dangerous" within the meaning of city ordinance where the property owner "could have ascertained the basis for the dangerous building hearings by reading Ordinance 290-H, reading the inspectors report filed in the docket of dangerous buildings, or by calling the building inspector or his supervisor").

In addition, the Town's letter was reasonably calculated to notify Mard of the nature and purpose of the independent medical

examination in light of the fact that she had submitted previously to an examination of that type.  In June 2001, the Town issued its first request that Mard attend an independent medical evaluation of the injuries she sustained on September 2, 2000.  As the examining physician, Dr. Cowell, noted in her report to the Town, "the examining process was explained to the examinee during that examination, and she under[stood] that there [was] no patient/treating physician relationship and the report will be sent to the requesting client."  Immediately after Dr. Cowell completed her examination and concluded that Mard could "perform a light duty job with essentially no lifting," Mard notified the Town that she had been placed on migraine medication that prevented her from driving and therefore from returning to work.  Based on this new information, the Town approved the continuation of Mard's injury leave.

In light of the state statute, the collective bargaining agreement, and her experience with a previous independent medical examination, the Town's letter of August 29, 2001 was reasonably calculated to apprise Mard of the pendency of both the examination and the potential termination of her benefits.  The letter instructed her to attend a second independent medical examination arranged at the Town's request and to bring with her any medical records pertaining to her injury.  It also included the heading, "Concentra Medical Examinations," the name of the occupational

-15-

health services provider that arranged Mard's first independent medical examination with Dr. Cowell.  Further, the letter warned that "pursuant to Section 45 of the Workers Compensation Act, failure to attend or obstruction of this examination may suspend [Mard's] right to compensation."  As a firefighter, Mard received injury leave benefits in accordance with Mass. Gen. Laws ch. 41, § 111F, rather than under the general Workers Compensation Act.[2] Mass. Gen. Laws ch. 152, § 45.  However, section 45 of the latter statute similarly provides for independent medical examinations of injured employees, the results of which may be used in subsequent decisions concerning the employee's eligibility for compensation. By referring Mard to a provision of the Workers' Compensation Act that is analogous to Mass. Gen. Laws ch. 41, § 111F, the letter provided clear indicia of the nature and purpose of the independent medical examination.[3]

_____

[2]Section 111F is unlike "'pure' workmen's compensation law" in that a recipient "is not entitled to benefits merely because he was injured in the course of employment: the officer must be injured through no fault of his own." Wincek v. West Springfield, 399 Mass. 700, 704 n.3 (1987).

[3]Section 45 of the Massachusetts Compensation Act provides that an injured employee on workers' compensation shall

>from time to time thereafter during the continuance of his disability . . . if requested by the insurer or insured, submit to an examination by a registered physician. . . . If a physician provided by the employee is not present at the examination, it shall be the duty of the insurer to file with the division a copy of the report of its examining physician or physicians if and when such report is to be used on the basis of any order

## B.    Hearing

Mard next argues that the district court erred in ruling that the independent medical examination provided by the Town prior to terminating her § 111F benefits was an adequate hearing under the due process clause of the Fourteenth Amendment.    Mard claims, first, that a medical examination may not as a matter of law constitute an adequate pre-termination check against the erroneous deprivation of injury leave benefits, even when combined with more comprehensive post-termination procedures.  Second, she argues that even if an independent medical examination can provide a constitutionally adequate pre-termination opportunity to be heard, the examination as conducted by Dr. Donahue did not provide sufficient due process.  We disagree on both grounds.

### 1.    The Pre-Termination Opportunity to be Heard

The Due Process Clause requires  "an opportunity to be heard . . . at a meaningful time and in a meaningful manner."  Armstrong v. Manzo, 380 U.S. 545, 552 (1965).   In general, the state must provide "some kind of hearing" before depriving an individual of a protected property interest.  Zinermon v. Burch, 494 U.S. 113, 127 (1990).   This hearing need not be elaborate.   Rather, where more

---

by the division.

Mass. Gen. Laws ch. 152, § 45. The section further provides that "if the employee refuses to submit to the examination or in any way obstructs it, his right to compensation shall be suspended, and his compensation during the period of suspension may be forfeited." Id.

-17-

comprehensive post-termination procedures are available, the pre-termination hearing need only provide "an initial check against mistaken decisions." Loudermill, 470 U.S. at 546. We find that an independent medical examination may serve as such an "initial check" and, coupled with adequate post-deprivation procedures, provide a meaningful opportunity to be heard.

Mard argues that recognizing a medical examination as a constitutionally adequate pre-termination check against erroneous decision making would "run counter to the rationale that forms the basis of the hearing requirement," a rationale that "emphasizes the need to alert the ultimate decisionmaker to disputes of fact and provide a hedge against erroneous decisions." We are not persuaded by this argument. Where a decision to terminate benefits turns on an evaluation of medical evidence, an examining physician is well qualified to resolve factual disputes about the injured firefighter's continued incapacity and to evaluate "the appropriateness or necessity" of terminating his or her injured on duty status. See Basciano v. Herkimer, 605 F.2d 605, 610 (2d Cir. 1978) (medical examination and review by City Medical Board provided adequate due process prior to determining eligibility for accident disability retirement benefits); Danese v. Knox, 827 F. Supp. 185, 195 (S.D.N.Y. 1993) (medical examination conducted by Port Authority doctors provided an adequate "initial check" against

erroneous determination that police officer was ineligible for line of duty sick leave).

Town-designated physicians serve as independent evaluators who base their opinions on the medical evidence before them, including evidence provided by the employee. See Basciano, 605 F.2d at 610 (when evaluating eligibility for disability retirement benefits, the responsibility of city-appointed physicians "was to make a medical judgment, not to function as adversaries or advocates"); American Board of Independent Medical Examiners, Guidelines of Ethical Conduct ("Physicians shall . . . [r]each conclusions that are based on facts and sound medical knowledge" and shall "[n]ever accept a fee for services which are dependent upon writing a report favorable to the referral service."), available at http://www.abime.org/abime/content/cime/m_guidelines.asp?site=4. As the Second Circuit has explained, where a decision turns on the evaluation of medical evidence, a pre-termination hearing before the ultimate administrative decision maker "presumably would require the resolution of conflicting medical opinions by lay administrators" and would be unlikely to result in a more reliable decision. Basciano, 605 F.2d at 611. See also Mathews, 424 U.S. at 343-44 (because the decision to revoke Social Security disability benefits "will turn, in most cases, upon routine, standard, unbiased medical reports by physician specialists concerning a subject whom they have personally examined," the added

value of a pre-termination hearing before the administrative decision maker is less than in the usual case of welfare entitlement)(internal citation and quotations marks omitted). By affording the injured firefighter an opportunity to present her medical records and discuss her injury with the examining physician, an independent medical examination serves as a constitutionally adequate initial check against an erroneous determination that a firefighter is physically capable of returning to active duty. See Loudermill, 470 U.S. at 542-43.

The adequacy of this kind of limited, pre-termination hearing rests in part upon the availability of more rigorous post-deprivation procedures. As the Supreme Court explained in Loudermill, "the existence of post-termination procedures is relevant to the necessary scope of pretermination procedures." Id. at 547 n.12 (holding that a limited pre-termination hearing was sufficient where it was followed by a more comprehensive post-termination hearing). Mard does not challenge the grievance procedures available to her under the collective bargaining agreement, and we have not been presented with any evidence suggesting that these procedures were insufficient for due process purposes. Thus, the Town did not violate Mard's due process rights by providing an independent medical examination rather than a more formal administrative hearing prior to its decision to terminate her benefits.

## 2. The **Parratt-Hudson** Doctrine

Mard also claims that the independent medical examination provided by the Town, as conducted by Dr. Donahue, did not afford her constitutionally adequate due process. Viewing the facts in the light most favorable to Mard, as the nonmoving party, we assume that Dr. Donahue conducted an eleven minute examination, refused to review the medical records that Mard brought to the appointment, and instructed her to refrain from volunteering any unsolicited information. We also accept for the purpose of summary judgment that Mard was not afforded an opportunity to tell Dr. Donahue about her migraines or the effect of her medications. These are troubling allegations, suggesting that Mard's presentation of her disability evidence may have been truncated at the pre-termination phase. However, these concerns do not give rise to a finding of unconstitutionality on the facts of this case. As we explain below, because the government neither contemplated nor authorized Dr. Donahue's alleged conduct, the Town's post-termination hearing procedures afforded to Mard all of the process due. See Parratt v. Taylor, 451 U.S. 527 (1981); Hudson v. Palmer, 468 U.S. 517 (1984).

Under the so-called Parratt/Hudson doctrine, due process is not violated where the deprivation is caused by the random and unauthorized conduct of state officials and where the state provides adequate post-termination procedures. See O'Neill, 210

-21-

F.3d at 50. In such situations, additional pre-deprivation safeguards would have little value in preventing an erroneous deprivation of the protected interest. Zinermon, 494 U.S. at 129. Thus, no matter how high the risk of erroneous deprivation posed by the challenged conduct, "the State cannot be required constitutionally to do the impossible by providing predeprivation process." Id. In other words, Parratt/Hudson provides that "[w]hen a deprivation of a property interest is occasioned by random and unauthorized conduct by state officials, . . . the due process inquiry is limited to the issue of the adequacy of postdeprivation remedies provided by the state." O'Neill, 210 F.3d at 50 (quoting Lowe v. Scott, 959 F.2d 323, 340 (1st Cir. 1992)). On the other hand, under the Supreme Court's decision in Zinermon, conduct is not considered unauthorized where the government has delegated broad authority to "effect the very deprivation complained of [by the plaintiff]." 494 US. at 136-39. Courts therefore must "scrutinize carefully the assertion by state officials that their conduct is 'random and unauthorized.'" Lowe, 959 F.2d at 341.[4]

We agree with the conclusion of the district court that Dr. Donahue's alleged failure to accept or consider Mard's medical

---

[4]We have rejected the view that Zinermon v. Burch undermined the Parratt-Hudson doctrine. Herwins v. City of Revere, 163 F.3d 15, 19 (1st Cir. 1998)(describing Zinermon as a case in which state law authorized the procedure that was followed, so the act of the state officials could not be "random and unauthorized").

information was random and unauthorized by the Town.  Mard does not claim that § 111F delegated to Town-designated physicians broad authority to perform unprofessional or inadequate medical examinations.  Nor does she suggest that Dr. Donahue's alleged conduct constituted a form of regular practice among physicians who perform § 111F independent medical examinations at the Town's request.  In fact, Mard acknowledges that the "statutory authority [delegated to the examining medical official] necessarily carries with it the concomitant duty to initiate procedural safeguards to protect against the unconstitutional deprivation of section 111F benefits."  As Mard herself suggests, § 111F contemplates that examining physicians will provide injured firefighters with an opportunity to present medical evidence and discuss their condition during the examination in order to guard against an erroneous determination that they are capable of returning to work.

Insofar as Dr. Donahue failed to "initiate procedural safeguards to protect against the unconstitutional deprivation of section 111F benefits," his conduct was in breach of the duty that ran "concomitant" to his statutory authority.  This alleged, unprofessional conduct, which was not authorized by the statute and did not form a regular pattern among § 111F physicians, did not violate Mard's due process rights so long as the Town provided an adequate post-deprivation remedy. O'Neill, 210 F.2d at 48-50.

As we have noted, Mard does not challenge the adequacy of the post-termination procedures provided under the collective bargaining agreement. Consequently, with respect to Mard's claims concerning the adequacy of her pre-termination hearing, we find that the post-termination grievance procedures provided Mard all the process that was due.[5]

### III.

For the foregoing reasons, the district court's entry of summary judgment in favor of the defendants is **affirmed**.

**So ordered.**

---

[5]Because we affirm the district court's grant of summary judgment in favor of the defendants on other grounds, we need not decide whether the grievance settlement entered into by the parties constituted a waiver of Mard's due process claims.