NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12095


 RENEE PERULLO <u>vs</u>.  ADVISORY COMMITTEE ON PERSONNEL STANDARDS.



         Suffolk.     January 9, 2017. - April 24, 2017.

 Present:  Gants, C.J., Botsford, Lenk, Hines, Lowy, & Budd, JJ.[1]


<u>Public Employment</u>, Removal.  <u>Trial Court</u>.  <u>District Court</u>.  <u>Due Process of Law</u>, Employment, Termination of employment.




        <u>Civil action</u> commenced in the Superior Court Department on January 12, 2015.

        The case was heard by <u>Elizabeth M. Fahey</u>, J., on motions for judgment on the pleadings.

        The Supreme Judicial Court granted an application for direct appellate review.


        <u>John F. Tocci</u> (<u>Cary P. Gianoulis</u> also present) for the plaintiff.
        <u>Suleyken D. Walker</u>, Assistant Attorney General, for the defendant.


        BOTSFORD, J.  In 2014, the clerk-magistrate of the Salem

Division of the District Court Department (Salem District Court)

────────────────────

        [1] Justice Botsford participated in the deliberation on this case and authored this opinion prior to her retirement.

removed the plaintiff, Renee Perullo, from her position as an assistant clerk-magistrate of that court. Perullo's removal followed a lengthy series of disciplinary reprimands and suspensions for misconduct that included abuse of leave time and other inappropriate behavior. Perullo brought this action in the nature of certiorari in the Superior Court to challenge her removal, and contends that the decision to remove her exceeded the statutory authority of the clerk-magistrate, in any event was arbitrary or capricious, and also violated her constitutional guarantee of due process. In ruling on cross motions for judgment on the pleadings, a Superior Court judge rejected Perullo's contentions and upheld the removal decision. Given Perullo's history of misconduct, we agree that it was appropriate for the clerk-magistrate to factor in the whole of Perullo's disciplinary record in deciding that removal was the appropriate level of discipline. We affirm the judgment of the Superior Court.

Background.[2] Perullo began her employment with the Commonwealth's trial court system in 1989. At the time of her removal in June, 2014, Perullo served as an assistant clerk-magistrate of the Salem District Court. According to § 2.000 of

---

[2] The background facts stated here are taken from the administrative record filed by the defendant in the Superior Court as its answer to Renee Perullo's complaint in the nature of certiorari.

the Massachusetts Trial Court Personnel Policies and Procedures Manual (Jan. 7, 2013) (Manual), an assistant clerk is a "managerial employee."

Perullo maintained a clean disciplinary record until 2006. Thereafter, she was disciplined numerous times by various District Court clerks. As detailed below, Perullo's disciplinary infractions generally fell into two categories -- excessive absenteeism and inappropriate behavior.

In February, 2006, Perullo agreed to a ten-day suspension without pay due to "inappropriate behavior" with a member of the Salem police department. In November, 2006, after agreeing to an indefinite transfer to the Lynn Division of the District Court Department (Lynn District Court), Perullo received a written warning for her use of profanity during a discussion with the clerk-magistrate of that court. In January, 2007, the clerk-magistrate requested that Perullo not return to the Lynn District Court based on the profanity incident, along with her failure to properly stamp certain criminal files, one of her assigned responsibilities.

In May, 2008, while assigned to work in the Chelsea Division of the District Court Department, Perullo made disparaging remarks about Spanish-speaking persons during a recess in court proceedings. As a result, the presiding judge of that court requested that Perullo be reassigned, and Perullo

ultimately was placed on administrative leave for approximately one week.

In November, 2009, after being transferred back to the Salem District Court, Perullo was removed from the payroll after exhausting all of her accrued leave time. Perullo's supervisor, Clerk-Magistrate Brian Lawlor, advised her not to abuse her sick time because it had an adverse impact on the administration of the court. On a day in June, 2010, Perullo did not report to work in the morning, but called in sick at some point after noon. Shortly thereafter, she was again removed from the payroll, having again exhausted all of her accrued leave time. Ultimately, Lawlor issued Perullo a written reprimand, informing her that any continued sick time abuse or insubordination could result in further disciplinary action, "up to and including termination."

The following month, Perullo was suspended without pay for five days after an "altercation" with two correction officers in the court parking lot. In June, 2011, Perullo was again suspended without pay, this time for one month. The suspension was based on twelve violations of court rules governing persons authorized to take bail, nine violations of the standards of employee conduct, and other infractions. In a letter describing these violations, Lawlor informed Perullo that, in light of her entire disciplinary record, Lawlor at that time believed he had

the authority to terminate Perullo.  However, Lawlor informed Perullo that, instead of termination, he would impose a two-month suspension without pay.  In a subsequent written agreement that reduced the suspension to one month, Perullo, after consulting with and being advised by counsel, agreed to "accrue and use sick time properly" pursuant to the Manual, and "acknowledge[d] that any further disciplinary action [was] likely to result in her termination."

In February, 2014, Lawlor issued Perullo another written reprimand regarding her "pattern of abuse" of leave time.  This memorandum explained that between January, 2012, and February, 2014, Perullo had only worked one two-week pay period during which she did not use any time off, and as a result she had just over six days of accumulated time off remaining.  The reprimand memorandum also expressed Lawlor's view that Perullo had "transformed [her] full-time job into a part-time one" and informed her that any further "abuse" of her leave time "[would] result in disciplinary action."  Subsequently, in March, 2014, Perullo was verbally reprimanded for distracting and unprofessional conduct in the court room.

In June, 2014, Lawlor convened a disciplinary hearing, after having provided written notice to Perullo in May.  At the hearing, Perullo was represented by counsel.  The purpose of the hearing was to determine whether cause existed to discipline

Perullo based on two grounds. The first was her "continuous abuse of sick and vacation time" despite the February, 2014, written reprimand.[3] The second ground stated was Perullo's alleged failure to pay a local business owner for renting a parking space near the Salem District Court House. Following the hearing, Lawlor determined that both grounds provided cause to impose discipline, and he set forth his findings in a letter to Perullo dated June 11, 2014.

In support of the first ground for discipline charged, Lawlor found that between February and June, 2014, there were only three weeks in which Perullo worked a full work week. He outlined Perullo's prior attendance-based discipline, noting in particular how, in February, 2014, he told Perullo that her pattern of sick time abuse could result in further discipline, as well as "removal from the payroll, which is unacceptable for any person, especially one in a senior management position." Lawlor also found that Perullo's "pattern of conduct" had not changed since the February warning, but rather that she had "continue[d] to fail to appear at work." Lawlor further found that Perullo's pattern of conduct "adversely affect[ed] [his] ability to manage this office and this court," and that her

_____

[3] Unfortunately, the record makes no effort to distinguish between Perullo's use of sick time and her use of vacation time. However, we do not think that this distinction would alter our analysis in this case.

"continued absences from work [left them] short-handed." As a result of these findings, Lawlor concluded that Perullo had violated three personnel rules: §§ 16.100.B.1 (failure to comply with reasonable order), 16.100.B.16 (chronic absences in reporting to work), and 16.100.B.22 (conduct that undermines administration of court) of the Manual.

With respect to the second ground for discipline, Lawlor stated in his letter that he learned of the parking space issue in April, 2014, when the business owner contacted Lawlor at the Salem District Court House to express dissatisfaction that one of Lawlor's employees failed to pay for parking at the business owner's establishment. The business owner informed Lawlor that Perullo had agreed to rent the space starting in late 2011 for sixty dollars per month. However, Perullo soon fell behind in her payments, and ignored efforts by the business owner to collect on three months of unpaid rent. Lawlor also stated that he was "loath[] to delve into someone's personal issues," but found that Perullo knowingly and voluntarily entered into the parking arrangement in furtherance of her position at the Salem District Court, and then intentionally ignored the business owner and failed to pay for services rendered. Lawlor concluded that this conduct violated four personnel rules: §§ 16.100.B.3 (discourtesy to public), 16.100.B.22 (conduct that undermines administration of court), 16.100.B.23 (conduct that tends to

bring court into disrepute), and 16.100.B.24 (conduct unbecoming trial court employee) of the Manual.

Having found that both alleged grounds for discipline were proved, Lawlor considered Perullo's entire disciplinary record to determine the appropriate discipline. Ultimately, he decided to terminate her employment.

Following the recommendation of the trial court's human resources department, the Court Administrator approved Lawlor's decision to remove Perullo.[4] Pursuant to G. L. c. 211B, § 8 (§ 8), and § 16.800 of the Manual, Perullo sought review of Lawlor's decision by the Advisory Committee on Personnel Standards (committee).[5] After a hearing, the committee affirmed the decision in November, 2014.

Perullo thereafter timely filed her complaint in the nature of certiorari in the Superior Court to challenge the removal

---

[4] Pursuant to the Massachusetts Trial Court Personnel Policies and Procedures Manual (Jan. 7, 2013) (Manual), the decision of Clerk-Magistrate Brian Lawlor, as Perullo's appointing authority, to remove Perullo was subject to approval by the Court Administrator after a review and recommendation of the trial court's human resources department. See § 16.700.B of the Manual.

[5] The Advisory Committee on Personnel Standards (committee) is established pursuant to G. L. c. 211B, § 8 (§ 8). Its members are the Chief Justice of the Trial Court, the Chief Justices of the seven trial court departments, the Court Administrator, the Commissioner of Probation, a clerk of the Superior Court, a clerk of the District Court, and a register of probate. See G. L. c. 211B, § 8, first par.

decision.[6]  Perullo and the committee filed cross motions for judgment on the pleadings.  After hearing, the judge allowed the committee's motion, and entered judgment for the committee.  Perullo appealed, and this court allowed Perullo's application for direct appellate review.

Discussion.  We review de novo the allowance of a motion for judgment on the pleadings.  Champa v. Weston Pub. Schs., 473 Mass. 86, 90 (2015).  Although the record before us does not contain the parties' pleadings in the Superior Court action, it appears that Perullo advanced essentially the same arguments in the Superior Court as she does on appeal.  In particular, Perullo's appeal raises three issues:  (1) whether the removal of an assistant clerk-magistrate comes within the scope of § 8; (2) whether the decision to remove Perullo was arbitrary or capricious, and therefore violated § 8; and (3) whether Perullo was afforded adequate procedural protections such that the constitutional guarantee of due process was satisfied.  We address each in turn.

1.  The scope of G. L. c. 211B, § 8.  Section 8, as amended through St. 2011, c. 93, § 52, establishes and defines the

---

[6] Perullo appropriately named the committee as the defendant because its affirmance of Lawlor's decision was the final decision of the administrative process, but there is no dispute that the focus of review in this action in the nature of certiorari is Lawlor's decision to remove Perullo.

duties of the committee (see note 5, supra), but it also concerns the duty of the Court Administrator to establish employment standards governing certain trial court employees, and defines the standard and procedures for the removal of the employees covered by that statute. Thus, § 8 provides in part:

"The committee shall advise the court administrator who shall establish and promulgate standards for the appointment, performance, promotion, continuing education and removal of all personnel within the trial court, except judges, clerks and registers of probate . . . .

"Subject to the terms of applicable collective bargaining agreements, any officer or employee whose appointment is subject to the provisions of this section may be removed by the appointing authority, in accordance with the standards promulgated by the committee; provided, however, that any such removal is not for arbitrary or capricious reasons and, if the employee so requests, is approved by the [c]ommittee. Every removal of an officer or employee whose appointment was subject to the provisions of this section shall be reviewed by the committee, and no such removal shall be final until approved by the committee" (emphases added).

Perullo argues that she does not come within the scope of § 8, because "judges, clerks and registers of probate" are excepted from the section's coverage and, as an assistant clerk-magistrate, she qualifies as a "clerk" within the exception. The argument fails.

Section 8 exempts from its scope "clerks." G. L. c. 211B, § 8. It never mentions "assistant clerks." See id. Clerks and assistant clerks are two distinct positions, as related sections of c. 211B make clear. See Commissioners of the Bristol County

Mosquito Control Dist. v. State Reclamation & Mosquito Control Bd., 466 Mass. 523, 528-529 (2013), and cases cited (court should interpret section of particular chapter not in isolation, but rather "in relation to the over-all framework" of chapter). In particular, G. L. c. 211B, § 10B, discusses the standards applicable to the "[a]ppointment of assistant clerks." This section vests "clerks" with the "exclusive authority" to appoint "assistant clerks" and describes the procedure that "clerks" must follow to make such appointments. It is difficult to conceive of a statute that more clearly distinguishes between "clerks" and "assistant clerks."[7] Yet, Perullo contends that the Legislature, just sections earlier in the same chapter of the General Laws, used the term "clerks" to denote both "clerks" and "assistant clerks." When statutes relate to the same subject matter, we must read them "as a harmonious whole and avoid absurd results" (citation omitted). Connors v. Annino, 460 Mass. 790, 796 (2011). We therefore reject Perullo's argument because it is clear to us that, in § 8, the Legislature has purposefully distinguished between "clerks" and "assistant clerks."

---

[7] See G. L. c. 218, §§ 1 (defining "clerks" as distinct from "assistant clerks"), 10 (providing that clerk of District Court "may . . . appoint one or more assistant clerks").

2. <u>Certiorari review</u>. In an action in the nature of certiorari, "the standard of review may vary according to the nature of the action for which review is sought." <u>Forsyth Sch. for Dental Hygienists</u> v. <u>Board of Registration in Dentistry</u>, 404 Mass. 211, 217 (1989). Under § 8, an assistant clerk-magistrate such as Perullo may be removed from her employment by her appointing authority -- here, Lawlor as the clerk-magistrate of the Salem District Court -- as long as the removal (1) was not for "arbitrary or capricious reasons," (2) followed the personnel standards promulgated pursuant to that statute, and (3) was approved by the committee. See G. L. c. 211B, § 8, fifth par.[8] Perullo does not contest the second or third of these rationales -- that is, she does not argue that her termination violated the governing personnel standards,[9] or that Lawlor's decision lacked approval by the committee. At bottom, therefore, Perullo's appeal centers on the claim that Lawlor's decision was arbitrary or capricious.[10] "A decision is arbitrary

---

[8] The relevant language of § 8, fifth par., is quoted in the text, <u>supra</u>.

[9] To the contrary, she argues that the committee's standards, although followed, were "clearly deficient" under a due process lens. We discuss this argument, <u>infra</u>.

[10] To the extent that Perullo suggests that a substantial evidence standard should govern, the plain language of the statute forecloses that argument. As the language of § 8 quoted previously in the text demonstrates, a covered employee may be

or capricious . . . where it 'lacks any rational explanation that reasonable persons might support.'"[11] Frawley v. Police Comm'r of Cambridge, 473 Mass. 716, 729 (2016), quoting Doe v. Superintendent of Schs. of Stoughton, 437 Mass. 1, 5 (2002). We consider Lawlor's decision to remove Perullo under this standard.

Lawlor's decision was based on his findings and conclusions about Perullo's excessive leave-taking as a management employee, as well as her inappropriate conduct in failing to pay for her rented parking space near the court house. Based on these two infractions, Lawlor considered the whole of Perullo's disciplinary record and terminated her. Perullo offers essentially three reasons why this was arbitrary or capricious: (1) her time off was always approved by her supervisors,

---

removed so long as the removal comports with the committee's standards, is approved by the committee, and is "not for arbitrary or capricious reasons." G. L. c. 211B, § 8, fifth par. Accordingly, the statute, in an action in the nature of certiorari such as this one, imposes an arbitrary or capricious standard of review, not a substantial evidence standard.

[11] Court decisions reflect that the phrases "arbitrary and capricious" and "arbitrary or capricious" are used essentially interchangeably, and typically denote the same standard. See, e.g., Frawley v. Police Comm'r of Cambridge, 473 Mass. 716, 728-729 (2016) (using "and" and "or" formulations interchangeably); Doe v. Superintendent of Schs. of Stoughton, 437 Mass. 1, 5-6 (2002) (same); T.D.J. Dev. Corp. v. Conservation Comm'n of N. Andover, 36 Mass. App. Ct. 124, 128 (1994) (same).

including, implicitly, Lawlor,[12] and therefore cannot constitute "abuse"; (2) the facts surrounding the parking space dispute were unverified and, in any event, were an inappropriate basis for imposing discipline; and (3) Lawlor imposed a new punishment for old disciplinary infractions. None of these arguments succeeds.

As a general matter, Perullo's arguments misapprehend the considerable managerial discretion that a District Court clerk-magistrate possesses. A clerk has "exclusive authority" to appoint assistant clerks. G. L. c. 211B, § 10B. As the appointing authority, the clerk also is vested with the power to remove assistant clerks, within the bounds of § 8, fifth par. In this regard, it is important to recognize the Legislature's decision, in 2011, to amend § 8 and replace what was a "for cause" termination standard with the current one, which allows termination for any reason that is not arbitrary or capricious, so long as the committee's standards are followed. Compare St. 1978, c. 478, § 110, inserting G. L. c. 211B, § 8 ("An officer

---

[12] More specifically, Perullo argues that, following the February, 2014, memorandum, she requested permission to take time off from her immediate supervisor, the first assistant clerk-magistrate, who approved those requests. Further, she argues that Lawlor was responsible for reviewing payroll records, including time off, for all court staff on a biweekly basis, and that by failing to object to Perullo taking any time off based on his regular review of payroll records, Lawlor "tacitly approved" her leave time.

or employee whose appointment is subject to the provisions of this section may be removed <u>for cause</u> by the appointment authority" [emphasis added]), and St. 1992, c. 379, § 76, amending G. L. c. 211B, § 8 (retaining "for cause" standard), with St. 2011, c. 93, § 52, amending G. L. c. 211B, § 8 ("[A]ny officer or employee whose appointment is subject to the provisions of this section may be removed by the appointing authority . . . provided, however, that any such removal is not for <u>arbitrary or capricious reasons</u>" [emphasis added]).

Considering Lawlor's first ground for removal, Perullo's alleged abuse of leave time, we are not persuaded by Perullo's contention that a supervisor's approval of her requests to take time off forecloses the possibility that she was misusing her leave time, at least not in the particular circumstances of this case. We recognize that, when Lawlor reprimanded Perullo in February, 2014, for abuse of leave time and when he terminated her in June, 2014, she maintained a positive balance of leave time; we of course also recognize that trial court employees generally are entitled to take the leave time that they accrue. However, three interrelated factors influence our analysis in this case.

First, a significant consideration here is the fact that Perullo was a "managerial" employee. See § 2.000 of the Manual. Managerial employees are "expected to perform their

responsibilities at a high level of competence." See § 16.300 of the Manual. One of the specific responsibilities of a managerial employee is to "work the hours needed or required by the operational needs of a particular court . . . providing reasonable notice is given." See § 8.100 of the Manual. The reason for that responsibility is that the work of a managerial employee sometimes is defined not "in terms of hours, days or weeks," but rather by the demands of "the orderly administration of justice." See id. To this point, Lawlor specifically informed Perullo, in February, 2014, that her pattern of absences was "unacceptable for any person, especially one in a senior management position," and that any further issues with leave time would result in discipline. Yet, over the next fifteen weeks, Perullo worked a full work week only three times.[13] Regardless of whether these absences were approved by a supervisor on a case-by-case basis, Perullo had ample notice that engaging in such a pattern of behavior was virtually certain to result in further discipline by Lawlor because it

---

[13] The record does not specify precisely when Perullo took time off in the other twelve weeks. However, Lawlor did state that, in that span, Perullo took over forty-seven hours of time off, in addition to using all five of her personal days. Roughly, that averages out to Perullo being out of the office for about one working day for twelve out of fifteen weeks following Lawlor's February, 2014, warning.

failed to meet his -- and, importantly, the Manual's -- expectations for a "managerial" employee.

Second, it was reasonable for Lawlor to determine that Perullo's habitual absences, effectuated by drawing down her leave time as soon as it accrued, constituted "chronic absences," see § 16.100.B.16 of the Manual, that disrupted the court's work,[14] see § 16.100.B.22 of the Manual (permitting discipline for "conduct that undermines the administration of the court").  It is well-documented that a clerk-magistrate like Lawlor "performs many roles that are crucial to the fair and efficient administration of justice in a District Court." Matter of Powers, 465 Mass. 63, 66 (2013).  See id. at 66-68 (discussing duties of clerk-magistrate).  Most pertinent here, the clerk-magistrate is part of the over-all "senior management team" in each court house, "working collaboratively to ensure the fair, effective, and efficient administration of justice." Id. at 68.  That role gives important texture to Lawlor's admonition to Perullo, in February, 2014, that he was unable to "ensure the efficient administration of this office if individuals at all levels did not appear at work as required,

---

[14] Perullo mentions in passing that some of her days off may have been related to Ménière's Disease.  To the extent that she may believe she was wrongfully terminated on the basis of that ailment, such an argument is not developed in the record before this court and we do not decide the question.

and that adversely impacts [his] ability to run [his] office." Perullo, in response to this warning, utterly failed to change her behavior.  Perullo might stand on different footing if she had not already been reprimanded repeatedly for exhausting her leave time.  But Perullo's disciplinary history lends further credence to Lawlor's position that her "chronic absences" represented a managerial problem in terms of his ability to staff the court house consistently.  Given that history, Lawlor was not obligated to stand idly by as Perullo continued to use her leave time as soon as it accrued.

Third, even assuming for the sake of argument that Perullo's absences by themselves did not constitute abuse of the trial court's leave policies, she had agreed with Lawlor, in 2011 and again in 2014, to cease her "pattern of abuse" of leave time -- in other words, to stop using her leave time as soon as it accrued.  It certainly was not unreasonable for Lawlor to conclude, based on Perullo's post-February, 2014, conduct, that she ignored this agreement, thereby violating the trial court policy permitting discipline for "failure or refusal to comply with a reasonable order."  See § 16.100.B.1 of the Manual.

It also was not irrational or unreasonable for Lawlor to treat the parking space dispute as a basis of his decision.  The personnel standards permit discipline for discourtesy to the public, see § 16.100.B.3 of the Manual; conduct that tends to

bring the court into disrepute, see § 16.100.B.23 of the Manual; and conduct unbecoming a trial court employee, see § 16.100.B.24 of the Manual. Because Lawlor received a telephone call at his office regarding Perullo's failure to pay for the parking space, it is evident both that the business owner knew that Perullo was a court employee and that Perullo's use of the parking space was connected to her court job. Lawlor rationally could conclude that this conduct constituted a violation of any of the policies mentioned above. If Perullo were starting from a clean disciplinary slate, the parking space dispute, perhaps, might be more questionable as a basis for discipline. But given Perullo's history of inappropriate conduct, including very public, work-related confrontations with and outbursts about others, Lawlor acted well within his discretion to investigate the parking space dispute and, after hearing Perullo's response, to treat the parking dispute as a cause for discipline.

Finally, after concluding that Perullo's absenteeism and the parking space dispute warranted discipline, it was neither arbitrary nor capricious for Lawlor to consider Perullo's entire disciplinary record when determining the appropriate sanction. Perullo's argument would have more force if the "for cause" standard for removal of a trial court employee remained in place, or if Lawlor were still obligated to use progressive discipline for a management employee like Perullo. But, as

discussed, the "for cause" regime has been replaced by the "arbitrary or capricious" standard currently prescribed by § 8, and progressive discipline does not apply to management employees like Perullo.  See §§ 16.400 and 16.500 of the Manual. In these circumstances, we conclude that Lawlor acted well within his broad managerial discretion to factor the history of Perullo's prior disciplinary offenses into his sanction and to determine that, given Perullo's long disciplinary record, the two new infractions constituted the proverbial "last straw" that made removal the appropriate level of discipline.

3. <u>Due process</u>.  Finally, Perullo argues that the process by which she was terminated was procedurally defective and violated the constitutional guarantee of due process of law.[15] "The threshold issue in a procedural due process action is whether the plaintiff had a constitutionally protected property interest at stake."  See <u>Mard</u> v. <u>Amherst</u>, 350 F.3d 184, 188 (1st Cir. 2003), citing <u>Cleveland Bd. of Educ</u>. v. <u>Loudermill</u>, 470 U.S. 532, 538-541 (1985).  Such a property interest may derive from existing rules or independent sources, such as State law.

---

[15] Perullo does not specify whether she relies on the United States Constitution or the Massachusetts Declaration of Rights. However, "[t]he protection afforded property interests by both provisions is subject to the same analysis."  <u>School Comm. of Hatfield</u> v. <u>Board of Educ</u>., 372 Mass. 513, 515 n.2 (1977).

Mard, supra at 189, citing Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

As discussed, § 8 permitted Perullo's removal for any reason that was not arbitrary or capricious, provided she received the protections provided by applicable statutes and rules. Thus, assuming for the sake of argument that Perullo had a constitutionally protected property interest in continued employment, due process was satisfied by compliance with § 8 and the personnel standards and policies promulgated by the Court Administrator and the committee, which included an opportunity for hearing before any discipline was imposed. See § 16.500 of the Manual. See also Roth, 408 U.S. at 577 (property interests "are created and their dimensions are defined by . . . an independent source such as state law").

Perullo has demonstrated no deviation from the governing statute or rules. Lawlor provided Perullo with written notice of the disciplinary hearing that resulted in her termination and the grounds that he alleged warranted discipline, along with the ability to appear with counsel at that hearing and to respond to the allegations orally or in writing. Perullo took advantage of this opportunity and both attended and participated in the hearing with her counsel. After the hearing's conclusion, Lawlor set forth in detail, in a written letter of decision, his findings and reasons for the discipline he ultimately imposed.

Consistent with the governing policies, the trial court's human resources department reviewed Lawlor's decision, and the court administrator approved it. Finally, as contemplated by § 8, the committee held a hearing that Perullo attended and at which her counsel presented arguments, before it affirmed the decision. These steps fulfilled the procedural protections promised by the relevant statute and rules, and in any event satisfied the demands of due process by providing Perullo with a full and fair opportunity to be heard. See Matter of Powers, 465 Mass. at 80-81 (where clerk-magistrate had constitutionally protected interest in his position, due process was satisfied when he received full and fair hearing before any meaningful deprivation occurred).

Perullo also suggests that Lawlor was unfairly biased against her based, in part, on his position as investigator and adjudicator regarding the parking space dispute. Both the Unites States Supreme Court and this court have rejected the notion that it necessarily violates due process to combine adjudicatory and investigative functions. See D'Amour v. Board of Registration in Dentistry, 409 Mass. 572, 580 (1991), and cases cited. More to the point, Lawlor, far from being biased against Perullo, allowed her several opportunities to correct her behavior before deciding to remove her. Accordingly, "[t]here has been no additional showing of actual bias to

support a claim of lack of impartiality." <u>Harris</u> v. <u>Board of Trustees of State Colleges</u>, 405 Mass. 515, 522 (1989).

Similarly, we reject Perullo's contention that the five-month delay between Lawlor's decision to terminate her and the committee's hearing was so untimely that it created an independent due process violation. We recognize that five months is a significant period of time to wait for a posttermination hearing. No explanation for this delay is apparent on the record, and the committee does not offer one in its brief. Although it would have been preferable for the committee to have held its hearing and made its decision on a more expedited basis, longer delays have been found to satisfy the demands of due process, and Perullo has not demonstrated any specific reason why the passage of time here resulted in a constitutional violation. See <u>Loudermill</u>, 470 U.S. at 547 (nine-month delay, without more, not unconstitutional).

<u>Conclusion</u>. For the reasons discussed, the Superior Court judgment is affirmed.

<u>So ordered</u>.