# DAVID BICKFORD *vs.* COLONEL, DEPARTMENT OF STATE POLICE.

No. 08-P-1288.

Plymouth. May 12, 2009. - January 29, 2010.

Present: KANTROWITZ, McHUGH, & MEADE, JJ.

*Administrative Law,* Judicial review, Substantial evidence. *Civil Service,* Termination of employment, Judicial review. *Constitutional Law,* Public employment, Self-incrimination. *Public Employment,* Police, Termination. *Police,* Discharge. *Due Process of Law,* Notice. *State Police.*

An order of the colonel of the State police, suspending the warrant of the plaintiff, a police officer, as a special State police officer, was not invalid by virtue of having been based on an erroneous ground, i.e., the officer's failure to cooperate with an investigation, where the administrative findings, which had substantial evidentiary support in the record, that the officer had a role in the disappearance of another officer's firearm, and took a grossly deficient approach to record-keeping that led to the disappearance of two police firearms, by themselves provided compelling reasons for the suspension of his warrant, and thus his warrant would have been suspended even absent the impermissible ground. [212-214]

There was no merit to a police officer's contention that he was given insufficient notice that his record-keeping practices for firearms would be at issue in a hearing that preceded the issuance of an order of the colonel of the State police suspending the officer's warrant as a special State police officer, where the language of the notice of hearing gave ample notice that all incidents of the officer's conduct pertaining to his suitability to act as a police officer were fairly on the table, and where specific discussion of his record-keeping practices in the materials enclosed with the notice highlighted the significance of record-keeping. [214-215]

CIVIL ACTION commenced in the Superior Court Department on December 11, 2006.

The case was heard by *Richard J. Chin,* J., on motions for judgment on the pleadings.

*Andrew J. Gambaccini* for the plaintiff.

*Jennifer Cartée,* Assistant Attorney General, for the defendant.

McHUGH, J. David Bickford, a police officer employed by the

Massasoit Community College police department (MCCPD), appeals from a judgment of the Superior Court affirming an order issued by the colonel of the State police suspending Bickford's warrant as a special State police officer (SSPO). See G. L. c. 22C, § 63.[1] Bickford maintains that the suspension rested on an impermissible ground and that he had not been given sufficient notice that his record-keeping practices would be at issue during the administrative hearing that led to the suspension order. After careful review of the record, we find no error and affirm.

*Background.* Substantial evidence in the record, see G. L. c. 30A, §§ 1(6), 14(7)(e), supports the hearing officer's findings that Bickford was the MCCPD's armorer and, as such, was responsible for identifying, retrieving, inspecting, and storing all weapons assigned to MCCPD officers and for maintaining an accurate log of the weapons' location.

Events leading to Bickford's suspension began in 2006 when he returned to work from a three-month disability leave to discover that an MCCPD pistol and three to five magazine clips were missing from his locker. Bickford's report of the disappearance to the MCCPD chief triggered a State police investigation.

Although the investigation did not uncover the missing firearm, it did reveal a host of other problems with Bickford's performance as armorer. Specifically, the investigation showed that in the year 2000, he participated in taking a personal firearm from MCCPD Sergeant Ann Holland's desk drawer to "secure it" without telling her he had done so. In violation of protocol, he did not report the incident to the MCCPD chief and instead kept the weapon for an extended period because, according to his testimony at the administrative hearing, he "forgot about it." The investigation further revealed that due to Bickford's substandard record-keeping, at least one additional MCCPD firearm was missing. In fact, at one point, Bickford lost his firearms log

---

[1]In material part, G. L. c. 22C, § 63, inserted by St. 1991, c. 412, § 22, provides that the colonel [of the State police], "at the request of an officer of a college, . . . [may] appoint employees of such college . . . as special state police officers. Such special state police officers shall serve for three years, subject to removal by the colonel, and they shall have the same power to make arrests as regular police officers for any criminal offense committed in or upon lands or structures owned, used or occupied by such college . . . ."

book and did not find it for at least three years, a period during which he completely stopped keeping a firearms log of any kind.[2] Bickford initially responded to all questions posed to him during the investigation but later, after consulting with his attorney, declined to submit to a polygraph examination and to further interviews without the presence of his attorney.

On July 19, 2006, the commander of the State police certification unit sent the MCCPD chief a letter suspending Bickford's SSPO warrant pending the outcome of certain criminal complaints and completion of the ongoing investigation into Bickford's suitability to serve as an SSPO. The letter said that Bickford had "not been cooperative in the investigation," noted the missing weapons, and also noted the incident with Sergeant Holland's firearm. In August, 2006, Bickford appealed the suspension and sought a hearing pursuant to G. L. c. 22C, § 43.[3] The hearing was held, and thereafter, a hearing officer issued a comprehensive report in which he found, among other things, that two firearms last seen in Bickford's custody were missing and could not be found. That finding accompanied other findings regarding Bickford's deficient performance, two of which were that Bickford had "refused to cooperate with a criminal investigation and knowingly disregarded his law enforcement responsibilities and duties" and that he had "grossly neglected his duties and responsibilities as the armorer of the [MCCPD] by failing to accurately maintain Firearms Log records, fail[ing] to accurately record the issuance and retrieval of Department weapons, and fail[ing] to safely secure weapons." For those reasons, the examiner recommended that Bickford's suspension be affirmed. After the State police colonel accepted the recommendation and suspended Bickford's warrant, MCCPD put him on indefinite leave.

---

[2]The MCCPD policy and procedure manual states, "The officer in charge of firearms shall inspect each departmental firearm on a yearly basis. An inspection log shall be kept by the officer in charge of firearms, and shall indicate whether the officer's firearm passed or failed the inspection. In the instance where a firearm is deemed to be in unsatisfactory condition, both the problem and action taken to rectify it shall be noted in the logbook."

[3]Under G. L. c. 22C, § 43, inserted by St. 1991, c. 412, § 22, "[a]ny person affected by an order of the [State police] department . . . may . . . appeal to the colonel who shall thereupon grant a hearing, and after such hearing the colonel may amend, suspend or revoke such order."

In December, 2006, Bickford petitioned for judicial review under G. L. c. 22C, § 43,[4] and G. L. c. 30A, § 14(7).[5] A Superior Court judge ultimately denied Bickford's motion for judgment on the pleadings and entered judgment for the colonel. The judge rejected Bickford's contention that he had no notice that negligent record-keeping would be at issue in the hearing. He further found that although it was an error of law to base the warrant suspension on Bickford's decision to decline a polygraph examination, the record contained substantial evidence of independent deficiencies that were sufficient to support the suspension decision. Specifically, the judge cited Bickford's failure to comply with record-keeping and inventory duties, Sergeant Holland's testimony about the incident involving her weapon, and other witnesses' testimony about additional firearms that went missing on Bickford's watch.

*Discussion.* On this appeal, Bickford claims that the Superior Court judge erred in failing to remand the matter for a new hearing after determining that the State police hearing officer committed an error of law by listing his failure to cooperate as one of the grounds for his suspension. Second, Bickford claims the judge erred in concluding that he received sufficient notice of the nature of the charges to be addressed at the hearing.

Dealing first with claimed error of law, we begin by observing that "[t]he scope of review of [an agency] decision, both in the Superior Court and in [an appellate] court, is defined by G. L. c. 30A, § 14." *Burlington* v. *Labor Relations Commn.*, 390 Mass. 157, 161 (1983). Section 14(7) authorizes a reviewing court to "affirm the decision of the agency, or remand the matter for further proceedings before the agency; or . . . set aside or modify the decision . . . if it determines that the substantial rights of any party may have been prejudiced because the agency

---

[4]General Laws c. 22C, § 43, also states, in relevant part: "Any person aggrieved by an order approved by the colonel may appeal to the superior court . . . . The superior court shall have jurisdiction in equity upon such appeal to annul such order if found to exceed the authority of the [State Police] department . . . . Nothing herein contained shall be construed to deprive any person of the right to pursue any other lawful remedy."

[5]General Laws 30A, § 14, as amended by St. 1973, c. 1114, § 3, allows a party "aggrieved by a final decision of any agency in an adjudicatory proceeding" to seek judicial review. Section 14(7) authorizes a reviewing court to affirm the decision, remand for further proceedings, or modify the decision.

decision is," among other things, "[b]ased upon an error of law." Here, as the Superior Court judge found, the State police hearing officer did make an error of law by citing failure to cooperate with the investigation as a ground for the decision to suspend Bickford's warrant. See *Carney* v. *Springfield*, 403 Mass. 604, 608-610 (1988) ("public employees cannot be discharged simply because they invoke their privilege under the Fifth Amendment to the United States Constitution not to incriminate themselves in refusing to respond to questions propounded by their employers"; "art. 12 of the [Massachusetts] Declaration of Rights requires transactional immunity to supplant the privilege against self-incrimination, even in the context of public employment").[6]

Bickford claims that the error of law vitiates the administrative proceeding and requires a remand for a new, error-free administrative proceeding. We do not agree. As "[t]he appealing party[, Bickford] has the burden of showing that his 'substantial rights . . . may have been prejudiced' by the agency's error." *Catlin* v. *Board of Registration of Architects*, 414 Mass. 1, 6 (1992). The administrative findings regarding Bickford's role in the disappearance of Sergeant Holland's weapon and his grossly deficient approach to record-keeping, an approach that led to the disappearance of two police firearms, have substantial evidentiary support in the record and, by themselves, provide compelling reasons for suspension of his warrant. We have no doubt that his warrant would have been suspended even if he had cooperated in the investigation or if his lack of cooperation had not been counted against him.

That being the case, the impermissible ground did not invali-

---

[6]The hearing officer's report actually described Bickford's lack of cooperation with two investigations. One was the investigation into the disappearance of the two weapons for which he had some responsibility, and the other was the investigation into taking Sergeant Holland's weapon. The colonel maintains that Bickford's failure to cooperate in the investigation regarding Sergeant Holland's weapon is a proper basis for suspension of his warrant, particularly because Bickford himself had that weapon. To be sure, Bickford's activities in connection with the Holland investigation were a proper basis for action and were specifically noted in the hearing officer's report. But those activities were not the focus of the officer's ultimate conclusion regarding Bickford's "refus[al] to cooperate with a criminal investigation." The record is clear that the refusal occurred in the context of Bickford's own conduct and the circumstances surrounding the disappearance of weapons for which he was responsible.

date the suspension order. When an agency decision rests on both a legitimate and an illegitimate basis, a court can nevertheless uphold the decision if it is clear that, after excising the illegitimate basis, the agency would have made the same decision. See *United Food Corp.* v. *Alcoholic Bevs. Control Commn.*, 375 Mass. 238, 245 (1978). See also *Kurzon* v. *United States Postal Serv.*, 539 F.2d 788, 796-797 (1st Cir. 1976); *Salt River Project Agric. Improvement & Power Dist.* v. *United States*, 762 F.2d 1053, 1060 (D.C. Cir. 1985) ("When an agency relies on a number of findings, one or more of which are erroneous, we must reverse and remand only when there is a significant chance that but for the errors the agency might have reached a different result. When it is clear that based on the valid findings the agency would have reached the same ultimate result, we do not improperly invade the administrative province by affirming"); *Casino Airlines, Inc.* v. *National Transp. Safety Bd.*, 439 F.3d 715, 717-718 (D.C. Cir. 2006), quoting from *Mail Order Assn. of America* v. *United States Postal Serv.*, 2 F.3d 408, 434 (D.C. Cir. 1993) ("We have consistently held that 'when an agency relies on multiple grounds for its decision, some of which are invalid, we may nonetheless sustain the decision as long as one is valid and 'the agency would clearly have acted on that ground even if the other were unavailable' "). We think that principle is applicable here and obviates the need for a remand.

Bickford's claim that he was given insufficient notice that his record-keeping practices would be at issue in the hearing fares no better. It is certainly true that "[d]ue process requires that, in any proceeding to be accorded finality, notice must be given [in a manner] that is reasonably calculated to apprise an interested party of the proceeding and to afford him an opportunity to present his case." *LaPointe* v. *License Bd. of Worcester*, 389 Mass. 454, 458 (1983). Here, as the Superior Court judge pointed out, the September 26, 2006, letter notifying Bickford of the hearing he had requested stated that "an Administrative Hearing will be conducted on the matter of the suspension of the [SSPO] warrant of Mr. David Bickford," and enclosed "documents deemed relevant to the matter of the warrant of Mr. David Bickford being suspended." One of those documents was an investigative report dated May 25, 2006, that discussed Bickford's record-keeping practices in extensive detail. We agree with the judge that the

"clear and expansive" language in the notice of hearing gave Bickford ample notice that "all incidents of his conduct pertaining to his suitability to act as a police officer were . . . fairly on the table" and that the specific discussion of his record-keeping practices in the materials enclosed with the notice highlighted the significance of record-keeping. In sum, Bickford had sufficient notice that his record-keeping practices would figure in the proceedings.

*Judgment affirmed.*