APPEALS COURT 
 
 JOHN F. ADAMS vs. SUPERINTENDENT, DEPARTMENT OF STATE POLICE & another[1]

 
 Docket:
 24-P-236
 
 
 Dates:
 March 5, 2025 – June 27, 2025
 
 
 Present:
 Blake, C.J., Hodgens, & Toone, JJ.
 
 
 County:
 Middlesex
 

 
 Keywords:
 State Police. Police, Suspension. Due Process of Law, Employment. Administrative Law, Judicial review.
 
 

       Civil action commenced in the Superior
Court Department on February 20, 2020. 
      The case was heard by Shannon Frison, J.,
on motions for judgment on the pleadings, and a motion for reconsideration was
considered by her. 
      Rebecca R. Krumholz, Assistant Attorney
General, for the defendants.
      Daniel J. Moynihan (Mark A. Russell also
present) for the plaintiff.
      BLAKE, C.J.  An overtime fraud investigation into members
of the State police led to the suspension without pay of the plaintiff, John F.
Adams.  In August 2018, Adams, a former
State police trooper in the now-defunct Troop E, was placed on paid
administrative leave pending a duty status hearing, then suspended without pay
pending the outcome of an internal affairs investigation.  Adams requested review of his suspension
pursuant to G. L. c. 22C, § 43 (§ 43 hearing).  Following that hearing, the superintendent
(colonel) of the Department of State Police (department) upheld the duty status
hearing decision.  Adams filed a
complaint in the Superior Court seeking judicial review of the colonel's
decision.  On cross motions for judgment
on the pleadings, the judge denied the defendants' motion and allowed Adams's
motion, vacated the order suspending Adams without pay, ordered Adams
reinstated with retroactive salary and benefits, and remanded the matter to the
duty status board for a new hearing.  On
the defendants' appeal, we reverse.
      Background.  On August 13, 2018, Adams was notified that
he was being placed on administrative leave with pay and that a duty status
hearing, pursuant to art. 6.2.1 of the department's rules and regulations, was
scheduled for August 15, 2018.[2]  The
next day, Adams received a letter advising him that he was the subject of an
internal affairs investigation.  He also
received a copy of a letter authored by Major Brian Watson (Watson letter)
dated August 9, 2018, requesting the investigation into Adams because of
"irregularities" discovered during an audit of Troop E's 2015
overtime.  The Watson letter listed
specific dates and referred to "attached copies of . . .
Pay[S]tation entries and the applicable radio affiliation logs," but those
supporting documents were not attached to the copy of the letter provided to
Adams.  On August 15, 2018, at 5:15 A.M.,
Adams's license to carry a firearm was suspended and he was notified of the
suspension shortly before his duty status hearing.  Later that morning, the duty status board
held the hearing.  No witnesses were
called, but the record included the Watson letter, which requested a
"personnel investigation" and alleged that Adams was not present for
six overtime patrols that he reported and for which he received overtime pay,
and that Adams left early from seven evening-shift patrols.  While the letter referred to certain attachments,
discussed above, they were not provided to Adams or reviewed by the duty status
board.  The board recommended that Adams
be suspended without pay, and that recommendation was adopted by the colonel.
      Adams appealed from the duty status
hearing decision under G. L. c. 22C, § 43, which provides any
person aggrieved by an order of the department with a right of appeal to the
colonel.[3]  In September 2018, in
preparation for the § 43 hearing, Adams requested copies of the records
referenced in the Watson letter.  He was
permitted to review the PayStation entries and radio logs described in the
letter in November 2018.  On August 29,
2019, Major David DeBuccia conducted the § 43 hearing.  There, Adams primarily argued that he had
been denied due process at the duty status hearing.  He submitted an affidavit, a memorandum, and
exhibits in support of his § 43 appeal. 
He also questioned the department's attorney, the detective lieutenant
who conducted the internal affairs investigation, and another former member of
Troop E.  The department introduced the
records referenced in the Watson letter and questioned the same detective
lieutenant and former member of Troop E. 
After the § 43 hearing, the colonel upheld the duty status hearing
decision to suspend Adams without pay and denied Adams's § 43 appeal.[4]
      Discussion.  The defendants contend that (1) our
review is limited to whether the colonel's decision had a rational basis;
(2) the judge erred in reversing the colonel's decision because, even if
we were to review for substantial evidence, the decision was based on reliable
and substantial evidence, supported by law, and in accordance with the
department's rules and regulations; (3) the preliminary duty status
hearing decision was not a final agency decision subject to judicial review;
and (4) Adams's due process rights were not violated.  We address each argument in turn.
      1. 
Standard of review.  "We
review de novo [a] judge's order allowing a motion for judgment on the
pleadings under [Mass. R. Civ. P. 12(c), 365 Mass. 754
(1974)]."  Commonwealth v. Fremont
Inv. & Loan, 459 Mass. 209, 212 (2011), quoting Wheatley v. Massachusetts
Insurers Insolvency Fund, 456 Mass. 594, 600 (2010).  Section 43 provides the Superior Court with
"jurisdiction in equity upon [a § 43] appeal to annul [the colonel's]
order if found to exceed the authority of the department or upon petition of
the colonel to enforce all valid orders issued by the department."  This deferential standard allows judicial
review for whether the colonel's order "exceed[s] the authority of the
department."  G. L.
c. 22C, § 43.  We thus review
to determine if the order was arbitrary or capricious.  See Sierra Club v. Commissioner of the Dep't
of Envtl. Mgt., 439 Mass. 738, 748-749 (2003), and cases cited (arbitrary or
capricious test appropriate where agency has broad discretion); Cumberland
Farms, Inc. v. City Council of Marlborough, 88 Mass. App. Ct. 528, 530 (2015)
("discretionary action . . . merit[ed] review only for an
arbitrary or capricious decision").  The arbitrary or capricious standard
"requires only that there be a rational basis for the decision."  Howe v. Health Facilities Appeals Bd., 20
Mass. App. Ct. 531, 534 (1985).
      Section 43's limited grant of jurisdiction
and deferential language suggest that the substantial evidence standard of
G. L. c. 30A, § 14 (7), is not applicable.  See Howe, 20 Mass. App. Ct. at 535-537 (where
statute limited judicial review to arbitrary or capricious standard, "the
somewhat more rigorous substantial evidence test" was not
appropriate).  The substantial evidence
test requires that "agency findings must rest upon such evidence as a
reasonable mind might accept as adequate to support a conclusion.  Review under the standard entails scrutiny of
the whole record to determine whether substantial evidence exists."  (Quotation and citation omitted.)  Id. at 534. 
Such review exceeds the scope of § 43, and we decline to adopt it.[5]
      2. 
The colonel's § 43 decision. 
On this record, we conclude that the colonel's decision to suspend Adams
without pay was not arbitrary or capricious. 
See Sierra Club, 439 Mass. at 748-749. 
Suspending Adams without pay was well within the colonel's authority and
consistent with the department's rules and regulations.  See Greaney v. Colonel, Dep't of State
Police, 52 Mass. App. Ct. 789, 792 (2001), S.C., 438 Mass. 1008 (2002)
(describing "broad powers" of colonel over department).  The colonel is charged with "direct[ing]
all inspections and investigations" and making "all necessary rules
and regulations for the government of the department," including
disciplinary matters.  G. L.
c. 22C, § 3.  See G. L.
c. 22C, § 10.  Article 6 of the
department's rules and regulations "details the procedures by which
[uniformed members of the department] may be investigated, and their misconduct
adjudicated."  Perez v. Department
of State Police, 491 Mass. 474, 480 (2023). 
These regulations "ha[ve] the force of law . . . and must
be accorded all the deference due to a statute."  Id. at 479, quoting Borden, Inc. v.
Commissioner of Pub. Health, 388 Mass. 707, 723, cert. denied sub nom.
Formaldehyde Inst., Inc. v. Frechette, 464 U.S. 936 (1983).
      Adams's duty status hearing was properly
conducted according to these regulations because a duty status hearing may be convened
where, as here, a member of the department "is the subject of an internal
investigation."  Art. 6.2.1(2).  In particular, the allegations in the Watson
letter, if true, were violations of the department's rules and regulations and
warranted both the convening of the duty status hearing and the duty status
hearing decision.  Suspension without pay
was an appropriate recommendation by the duty status board.  See art. 6.2.4.
      The colonel's decision to sustain the duty
status determination after the § 43 hearing was likewise lawful.  Following a recommendation by the duty status
board, the colonel has discretion to "impose a Duty Status consistent with
the Board's recommendation," or "impose a different Duty Status if
facts, circumstances, evidence, aggravating or mitigating factors or any other
matters so dictate."  Art.
6.2.5.  Regardless of whether Adams was
provided with adequate process at the duty status hearing, addressed infra,
there was ample evidence before the colonel to support Adams's suspension after
the § 43 hearing.  The colonel
reviewed a recommendation based on the record developed at the hearing,
including the relevant pay logs, the relevant radio logs, and other documents
supporting the allegations.  As the judge
recognized, "These records can be reasonably read to indicate that Adams
was not active for six overtime shifts that he reported working."  This sufficed to sustain Adams's suspension.[6]
      3. 
The duty status hearing.  a.  Scope of review under § 43.  The familiar principle that "only final
agency decisions are subject to judicial review," Paquette v. Department
of Envtl. Protection, 55 Mass. App. Ct. 844, 847 (2002), applies as equally to
§ 43 as it does to appeals brought under G. L. c. 30A, § 14.  Section 43 provides an administrative appeals
process for department members like Adams to challenge the department's
disciplinary actions.  See Doherty v.
Civil Serv. Comm'n, 486 Mass. 487, 495 (2020) (§ 43 provides State police
troopers "internal appellate rights" from discipline decisions,
including sanctions not subject to review by Civil Service Commission).  The process culminates in the § 43
appeal and the colonel's decision, which is the final action reviewable by the
Superior Court.  See G. L.
c. 22C, § 43 ("The superior court shall have jurisdiction
. . . to annul such order . . ." [emphasis added]).
      Here, the judge exceeded the scope of
judicial review under § 43 by reviewing the duty status hearing and
subsequent recommendation.  In addition,
the judge premised her decision to reverse the colonel's § 43 decision, at
least in part, on her conclusion that the duty status hearing was improperly
conducted.  The record and Massachusetts
case law do not support focusing on the duty status hearing.  To the contrary, at the § 43 hearing,
Adams introduced evidence and developed the record to challenge his
suspension.  The colonel then reviewed
the record de novo and exercised his discretion.  See Massachusetts Correction Officers
Federated Union v. County of Bristol, 64 Mass. App. Ct. 461, 469-470 & n.12
(2005) (administrative appeal allows agency to remedy errors based on more
expansive review).  The colonel's
decision had a rational basis in the evidence and was not arbitrary or
capricious.  In these circumstances the
judge erred in focusing on the duty status hearing.
      b. 
Due process.  Because the
§ 43 hearing provided Adams with adequate due process (and Adams does not
argue otherwise), we need not evaluate the quantum of process provided to Adams
at the duty status hearing.  Nevertheless,
we note that the procedural protections afforded to Adams at that hearing were
sufficient to satisfy the due process guarantees of the United States
Constitution and the Massachusetts Declaration of Rights.  See Hoffer v. Board of Registration in Med.,
461 Mass. 451, 454 n.5 (2012); School Comm. of Hatfield v. Board of Educ., 372
Mass. 513, 515 & n.2 (1977) (Federal and Massachusetts due process
provisions are "subject to the same analysis").
      To establish a due process violation,
Adams must have been deprived of a constitutionally protected property
interest.  Mard v. Amherst, 350 F.3d 184,
188-189 (1st Cir. 2003), citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S.
532, 538-541 (1985) (Loudermill). 
Assuming without deciding that Adams's suspension infringed on a
protected property interest, we turn to the defendants' contention that Adams
received the procedural protections he was due. 
See Gilbert v. Homar, 520 U.S. 924, 928-929 (1997).  The judge found that "Adams was provided
with adequate notice of the literal charges against him" but that the duty
status hearing did not provide him "with a meaningful opportunity to be
heard."[7]  We disagree.
      "[D]ue process requires that, in any
proceeding to be accorded finality, notice must be given [in a manner] that is
reasonably calculated to apprise an interested party of the proceeding and to
afford him an opportunity to present his case."  Bickford v. Colonel, Dep't of State Police,
76 Mass. App. Ct. 209, 214 (2010), quoting LaPointe v. License Bd. of
Worcester, 389 Mass. 454, 458 (1983). 
"[The] formality and procedural requisites for the hearing can
vary, depending upon the importance of the interests involved and the nature of
the subsequent proceedings." 
Loudermill, 470 U.S. at 545, quoting Boddie v. Connecticut, 401 U.S.
371, 378 (1971).  In Loudermill, the
Court "held that pretermination process need only include oral or written
notice of the charges, an explanation of the employer's evidence, and an
opportunity for the employee to tell his side of the story."  Gilbert, 520 U.S. at 929, discussing
Loudermill, supra at 546.  The Court in
Gilbert explained that presuspension process requires something less than pretermination
process and that the purpose of a presuspension hearing is "to assure that
there are reasonable grounds to support the suspension without pay."  Gilbert, supra at 933-934.
      Moreover, we note that the department was
required only to prove that the duty status hearing was justified, i.e., that
Adams was subject to an internal investigation, not that the underlying
allegations were true.  See art. 6.2.1(2)
(internal investigation warrants duty status hearing).  Here, there was more.  Adams was notified of the duty status hearing
and informed of the allegations against him in the Watson letter.  While copies of the documents referenced in
the Watson letter were not provided to Adams or reviewed at the duty status
hearing, the letter detailed the allegations, described the department's evidence,
provided the specific dates under investigation, and stated a request for an
internal investigation.  Adams was also
given an opportunity to respond to the allegations at the duty status hearing,
though he chose not to.  See Wojcik v.
Massachusetts State Lottery Comm'n, 300 F.3d 92, 102 (1st Cir. 2002), citing
Loudermill, 470 U.S. at 545-546 (pretermination process requires notice and
opportunity to respond).  The duty status
hearing, although brief, provided Adams with more procedural safeguards than have
been required at a pretermination hearing. 
See Gilbert, 520 U.S. at 933-934 (lack of presuspension hearing was
constitutionally adequate because arrest and felony charges provided adequate
assurance that suspension had reasonable grounds).  Cf. Wojcik, supra (confrontation and
questioning by investigators along with full arbitration hearing was
constitutionally adequate pretermination process).  Compare Hall-Brewster v. Boston Police Dep't,
96 Mass. App. Ct. 12, 21-24 (2019) (under unique statutory scheme applicable to
Boston police detectives, internal investigatory interview was insufficient
process where detective was not informed of evidence against him, conduct under
scrutiny, or disciplinary consequences), with Perullo v. Advisory Comm. on
Personnel Standards, 476 Mass. 829, 841 (2017) (court employee not deprived of
due process rights because she had notice of disciplinary hearing, was provided
alleged grounds for discipline imposed, and had ability to appear at hearing
prior to termination).  "As the
Supreme Court has observed, the requisite procedures 'need not be
elaborate.'"  Whalen v.
Massachusetts Trial Court, 397 F.3d 19, 26 (1st Cir. 2005), cert. denied, 546
U.S. 872 (2005), quoting Loudermill, supra at 545.  The procedural protections afforded to Adams
were commensurate with the preliminary and limited inquiry at the duty status
hearing.
      Conclusion.  The judgment is reversed, and the case is
remanded to the Superior Court for entry of judgment for the defendants.
So ordered.
 
footnotes
 
[1] Department of
State Police.
 
[2] Article 6.2.1
provides that a division commander may convene a duty status hearing if a
member of the department is "the subject of an internal
investigation."  The hearing is
conducted by a duty status board "consisting of three staff and/or commissioned
officers."  Art. 6.2.2.  The board gathers and reviews facts "to
make a fair determination relative to the member's appropriate duty
status," makes findings, and recommends to the colonel whether the member
should be continued on full duty, placed on restricted duty, suspended with
pay, or suspended without pay.  Arts.
6.2.2, 6.2.4.
 
[3] The
colonel-superintendent is the executive and administrative head of the
department.  See G. L. c. 22C,
§§ 1, 3; art. 3.1 of the department's rules and regulations.
 
[4] The plaintiff
sought judicial review of the colonel's decision in the Superior Court.  In allowing Adams's motion for judgment on
the pleadings, the Superior Court judge found that Adams was not provided
adequate due process at the duty status hearing; that it was arbitrary and
capricious for the duty status board to suspend Adams without pay; the
recommendation following the § 43 hearing to suspend without pay was
arbitrary and capricious, and not based on substantial evidence; and the
colonel's decision to uphold Adams's suspension without pay was based upon an
error of law because the duty status hearing was "constitutionally lacking
in evidence."  The judge denied the
defendants' motion for reconsideration.
 
[5] To the extent
Adams argues that review of a § 43 decision should be more robust because
§ 43 provides that the Superior Court has jurisdiction "in
equity" to annual a § 43 decision, we are not persuaded where the
statute plainly sets forth the standard of review.
 
[6]
Notwithstanding the review undertaken by the colonel, he did not need to reach
the facts underlying the duty status hearing as that was limited to determining
whether there was reason to suspend Adams, i.e., a pending internal investigation
under art. 6.2.1(2) of the department's rules and regulations.  Put differently, the question for the colonel
was whether the duty status hearing was based on "reasonable
grounds."
 
[7] Contrary to
the conclusion of the Superior Court judge, the suspension of Adams's license
to carry did not show that the duty status hearing decision was a
"foregone conclusion."  As the
judge stated, "The revocation or suspension of such license is . . .
a separate process from reviewing an officer's employment status."  There is no evidence of predetermination;
rather, like the duty status hearing, the suspension of Adams's license was
triggered by the allegations of overtime fraud.